Kenneth BIGHAM, Jr., Relator,

v.

The Honorable Georgia DEMPSTER and the Honorable Bill Henderson, Judges, Respondents.

Vickie Rene BIGHAM, Relator,

v.

The Honorable Dan R. BECK, Judge, Respondent.

Nos. 95–0075, 95–0081.

Supreme Court of Texas.

Argued March 22, 1995.

Decided June 8, 1995.

Rehearing Overruled Aug. 1, 1995.

Walter P. Mahoney, Pasadena, for relator.

Carl A. Parker, Port Arthur, Oscar Mauzy, Austin, Clarence F. Kendall, II, Frank W. Mitchell, Michael B. Martin, Daryl L. Moore, Houston, John W. Wied, LaGrange, C.L. Ray, Austin, Eugene A. Cook, Houston, Joe R. Greenhill, Kent Hance, Austin, Pamela E. George, Houston, Charles B. Lord, Austin, for respondents.

Justice GAMMAGE delivered the opinion of the Court joined by Chief Justice PHILLIPS, Justice HIGHTOWER, Justice HECHT, Justice CORNYN, and Justice ENOCH.

These child custody proceedings present a dominant jurisdiction problem. The procedural facts are complicated, but the legal problem is simple. The legal issue is when a

transfer order becomes "docketed" in the transferee court to deprive the transferring court of jurisdiction over the children. We hold that when a certified copy of the transfer order has been presented to the judge of the transferee court, who proceeds as though the case were docketed by having the clerk assign a number and taking jurisdiction over the children to hear an emergency motion, the case is docketed in the transferee court to the exclusion of jurisdiction in the transferring court. We conditionally grant the writ of mandamus on behalf of Kenneth Bigham, Jr., and deny relief to Vickie Rene Bigham.

■ This child custody dispute began when Mr. Bigham filed a petition for divorce in the 308th District Court of Harris County. Due to the ill health of the presiding judge, the Presiding Administrative Judge, Honorable Tom Stovall, assigned the case to the Honorable Bill Elliott, Judge of the 311th District Court. Judge Elliott, on his authority as administrative judge for the Family Trial Division of Harris County Courts, transferred the case to his court, the 311th

District Court of Harris County. This order is reflected only by a docket notation.[1] Judge Elliott signed in June 1994 an agreed decree of divorce [2] which set the managing conservatorship for the two children (boys aged six and two) and established Harris County as the children's domicile, which could be changed only upon leave of court.

In July 1994, Mr. Bigham filed a motion to modify custody, and a motion for temporary orders allowing him to take the children with him when he moved to Fayette County. Judge Elliott granted the motion for temporary orders.

■ In November 1994, Mr. Bigham filed a motion to transfer the suit affecting the parent-child relationship to Fayette County for the convenience of the parties and children. Ms. Bigham opposed the motion. Her pleadings raised the issue whether the motion was timely under the Family Code. Over Ms. Bigham's objections, the trial court signed an order transferring the case to the 155th District Court of Fayette County on December 19, 1994.[3] Mr. Bigham filed a

1. By affidavit, Judge Elliott states that a simple docket notation was the standard practice for transferring cases in the Family Trial Division at that time.

2. The legal effect of consenting to the divorce decree in the 311th Court, since that court would have had jurisdiction over a divorce petition originally filed there, was to invoke the court's jurisdiction, seek and obtain affirmative relief, and waive any formal defects in the transfer procedure, whether one treats the judge's signing the consent decree as signing of an order for another court or a direct decree in his court. See, e.g., Newman v. Link, 889 S.W.2d 288, 289 (Tex.1994); Short v. Short, 354 S.W.2d 933, 935 (Tex.1962); Knollhoff v. Norris, 152 Tex. 231, 256 S.W.2d 79, 82 (1953); Carle v. Carle, 149 Tex. 469, 234 S.W.2d 1002, 1004 (1950). By briefs filed in this court, Ms. Bigham has conceded she consented to the divorce decree and the transfer to the 311th Court was valid. The divorce decree further set the 311th Court as the court of exclusive, continuing jurisdiction for any future suit affecting the parent-child relationship. TEX.FAM.CODE ANN. § 11.05(a) (Supp.1995). Unless there is a valid transfer under section 11.06, the court rendering the original divorce decree and establishing the original conservatorship for the minor children remains the court of continuing and exclusive jurisdiction. See Alexander v. Russell, 699 S.W.2d 209, 209–210 (Tex.1985).

3. The dissent asserts that Ms. Bigham is entitled to mandamus relief because the motion to transfer was untimely; however, she only sought mandamus relief in this Court against Judge Beck (Fayette County), and she never raised the issue—that the original transfer motion was untimely—in Judge Beck's court. Since she never raised the issue before Judge Beck, she is not entitled to mandamus relief against him on that basis. O'Connor v. First Court of Appeals, 837 S.W.2d 94, 97 (Tex.1992) (must be proper request stating correct legal reason directed to judge against whom mandamus is sought).

The dissent concedes that Ms. Bigham did not seek mandamus relief against Judge Elliott, to whom she did assert untimeliness, but seeks to justify it because the 311th District Court had "plenary power" to change the order even after Judge Henderson, Judge Elliott's successor, took office. This assertion there was "plenary power" assumes the transfer never became docketed in Fayette County, which is contrary to our holding on that issue. Even assuming that the delay in seeking mandamus relief was excusable, our record does not show Ms. Bigham ever presented the untimeliness grounds to Judge Henderson. She later did urge the issue before Judge Dempster of the 308th District Court, but that court lacked jurisdiction. For other reasons, Judge Henderson, on the Court's own motion, did sign an order purporting to set aside the transfer order and transfer the case back to the 308th

certified copy of the transfer order with the Fayette County District Clerk on December 29, 1994. The Fayette County District Clerk made an "official" notation that the case was "docketed" on January 4, 1995. The Harris County District Clerk did not forward the file to Fayette County, but did begin preparing the copies of the court files for transfer to the Fayette County District Clerk, according to the usual Harris County procedure.

On January 1, 1995, Judges Georgia Dempster and Bill Henderson assumed office in the 308th and 311th District Courts, respectively. January 3, 1995, Ms. Bigham filed in the 308th Court motions seeking an order setting aside the transfer by Judge Elliott from the 308th Court to the 311th Court and a motion for temporary orders to give Ms. Bigham more frequent visitation and to appoint a mental health professional to interview the children. The court set Ms. Bigham's motions for hearing in two day's time. Judge Henderson on January 5, 1995, instructed the 311th District Clerk not to send the files of the case to Fayette County.

In the meantime, on January 4, 1995, back in the 155th Court of Fayette County, Mr. Bigham filed a verified motion for emergency relief seeking a temporary restraining order to prohibit Ms. Bigham from taking the children out of Fayette County. The court set the underlying motion for hearing January 18, 1995, and granted Mr. Bigham's requested temporary restraining order on an *ex parte* basis. After being served with the temporary restraining order, Ms. Bigham took the children to Harris County anyway. On January 5, 1995, the Fayette County court issued a writ of attachment, authorizing any sheriff to bring the children back to the possession of Mr. Bigham, and noticing Ms. Bigham to appear January 18, 1995 and show cause why her physical possession of the children should not be further suspended.

The children were brought back to Fayette County.

On January 6, 1995 Judge Henderson signed an order purporting to vacate the December 19, 1994 order of transfer from the 311th to the 155th District Court of Fayette County. The order also purports to transfer the case back to the 308th Court in which it was originally filed. The January 6th order to transfer the case to the 308th Court recites it is "pursuant to rule 3.1, Rules of the Judicial District Courts of Harris County, Texas, Family Law Division (effective 1/1/95)." [4] Also on January 6, 1995, Judge Dempster out of the 308th Court issued an "Order on Special Appearance" which recites that there never was a transfer out of the 308th to the 311th District Court, much less out of the 311th to the 155th. The 308th District Court heard Ms. Bigham's petition for writ of habeas corpus and purportedly ordered Mr. Bigham to return the children to Ms. Bigham by 4:00 p.m. that day.

Mr. Bigham sought immediate temporary and final mandamus relief in the First Court of Appeals. That same day the court of appeals granted leave to file the mandamus petition and ordered temporary relief staying proceedings in the 308th Court. In obedience to the stay order, the 308th Court continued the hearing on Ms. Bigham's motion for temporary orders.

On January 11, 1995, the court of appeals withdrew its orders as improvidently granted, and overruled Mr. Bigham's motion for leave to file. The same day the 308th District Court faxed notice to counsel for both parents that the court would reconvene the hearing on Ms. Bigham's request for temporary orders the next day, and ordered Mr. Bigham to bring the children to the court by 2:00 p.m.

The 308th Court heard Ms. Bigham's motions on January 12th, but Mr. Bigham did

District Court. If Ms. Bigham ever raised the untimeliness issue before Judge Henderson, it was only after that court had lost jurisdiction to the 155th District Court, at a point not reflected in our mandamus record.

**4.** Rule 3.1 states: *"Multiple Suits.* In all instances where a suit is filed in one of the courts in the Family Law Trial Division, and thereafter the suit is in any way terminated (by non-suit or otherwise) and a subsequent suit or cause of action involving the same parties or the same subject matter is filed, the same shall be filed in or transferred to the court that first had jurisdiction of the said parties or subject matter." The order does not suggest what the "terminated" suit that would bring this provision into effect might be.

not appear personally and did not bring the children. Counsel appeared on his behalf, but the court maintained it had jurisdiction over the children and issued a writ of attachment ordering any sheriff to deliver them to Ms. Bigham's possession. The next day the 308th Court issued temporary orders purporting to remove Mr. Bigham as joint managing conservator, name Ms. Bigham as temporary sole managing conservator, and appoint Mr. Bigham as temporary possessory conservator. The orders deny Mr. Bigham any access to or possession of the children until further order of the court, and confines them to Harris County. Mr. Bigham immediately filed a motion for leave to file petition for writ of mandamus in the First Court of Appeals, again seeking mandamus relief from Judge Dempster's orders.

On January 17, 1995, Judge Dempster signed out of the 308th Court a temporary injunction purportedly enjoining Mr. Bigham from "Instituting, prosecuting, requesting, participating or pursuing any action in any other court, state or nation attempting to obtain temporary or permanent orders concerning ... the parent-child relationship involving the minor children, Kenneth Noble Bigham, III and Martin Lewis Bigham." On January 18, 1995, the court of appeals denied Mr. Bigham's second request for mandamus relief.

That same day, back in Fayette County, Ms. Bigham filed a special appearance to contest the jurisdiction of the 155th Court, and a plea in abatement claiming exclusive jurisdiction in the 308th Court. The 155th District Court overruled the special appearance and plea in abatement and held a hearing on Mr. Bigham's motion for temporary orders. After the hearing but before any orders, Ms. Bigham on January 20th filed a motion for mandamus relief in the Third Court of Appeals in Austin, which denied the request on January 23rd. On January 26th the 155th District Court of Fayette County rendered its temporary orders, reciting as fact findings that the Fayette County District Clerk had docketed the transferred case

on January 4, 1995, that Ms. Bigham had violated the court's orders by removing the children from Fayette County, and that Ms. Bigham had rented a residence in Fayette County. The order directed that Ms. Bigham's visitation be supervised by the sheriff or a deputy of Fayette County, and that Mr. Bigham and Ms. Bigham participate in mediation for 60 days beginning February 1, 1995 and appear on March 1, 1995 before the court to show good faith compliance.

Mr. Bigham filed a mandamus proceeding in this court against Judges Dempster and Henderson. Shortly thereafter Ms. Bigham sought relief against Judge Beck. We consolidated the cases to hear argument.

■ These proceedings present conflicting orders issued from different district courts. Under these circumstances, this court will normally resolve the dominant jurisdiction question and issue the writ of mandamus to direct which, if any, of the conflicting orders are valid. *See Abor v. Black,* 695 S.W.2d 564, 567 (Tex.1985); *Curtis v. Gibbs,* 511 S.W.2d 263, 267 (Tex.1974). As we noted above, the Family Code provides, with exceptions [5] that do not apply here, that only one court at any time has the exclusive continuing jurisdiction over the children. The question is which, if any, of the competing courts has that exclusive, continuing jurisdiction.

Ms. Bigham argues essentially two reasons why the 155th Court should not have an effective transfer conferring continuing jurisdiction. First, she argues that the 311th Court had plenary power for thirty days after Judge Elliott signed the transfer order to rescind or modify it. She asserts Judge Henderson rescinded the transfer by his January 6th order while his court had plenary power. Second, Ms. Bigham argues that provisions in the Family Code require that the transferring court have sent originals or certified copies of records, or taken other actions, before the transferred case can be "docketed" in the transferee court.

Both sides agree that the issue is when the transferred case is "docketed." A Family

5. *See, e.g.,* Tex.Fam.Code § 11.05(f) [parents have remarried after divorce and seek a second divorce], § 11.05(g) [both parents, all parties involved and child have established principal residence in another state].

Code provision flatly declares, "The jurisdiction of the transferring court terminates on the docketing of the case in the transferee court."[6] The disagreement concerns what the provision means by "docketing."

■ Ms. Bigham contends that the transferee court cannot docket the case until the transfer order becomes "final." She argues the law is settled that a transfer of venue order only becomes "final" when the thirty days provided under rule 329(b), Tex.R.Civ. P., have expired. Until then, she argues, the trial court has plenary power over the order. Unless the transfer order becomes final, she asserts the transferee court may not "docket" the case. For her primary authority she cites *HCA Health Services of Texas, Inc. v. Salinas,* 838 S.W.2d 246 (Tex.1992) (per curiam) and *Seay v. Valderas,* 643 S.W.2d 395 (Tex.1982) (per curiam).

The case actually involving a Family Code transfer is *Seay v. Valderas,* in which the transferring court, over *three months* after signing the transfer order, signed another order purporting to rescind the transfer. The court even went so far as to order the clerk of the transferee court to return immediately the complete files of the case. In 1982, at the time of our *Seay* opinion, the Family Code language providing that docketing in the transferee court terminates jurisdiction in the transferring court had not been enacted. Instead, in *Seay* we relied on a sentence providing, "After transfer, the transferring court does not retain jurisdiction of the child who is the subject of the transfer." *Id.* at 397. We concluded that the transfer order was at least subject to the finality provisions under the Rules of Civil Procedure, and wrote: "Although a transfer order is an interlocutory order, it is final as to the transferring judge once the judge loses plenary power over the order. *See* Tex.R.Civ.Pro. 329b(d)." *Id.* The "finality"

analysis in *Seay* no longer applies, since section 11.05(h) now provides the additional express limitation that jurisdiction terminates upon docketing in the transferee court.

In the subsequent case of *HCA Health Services v. Salinas,* an ordinary venue transfer under rule 87, Tex.R.Civ.P., was involved. The motion to transfer venue had been set for November 8, 1991, but a proposed order granting the transfer had inadvertently been presented to and signed by the judge on October 31. *Salinas,* 838 S.W.2d at 247. We pointed out that under *Henderson v. O'Neill,* 797 S.W.2d 905 (Tex.1990) (per curiam), it is an abuse of discretion authorizing the mandamus remedy for a trial court to rule on a motion to transfer venue without giving the parties the notice required by Tex.R.Civ.P. 87, subd. 1. *Id.* at 247–48. We cited *Seay* in part for the proposition that the trial court had plenary jurisdiction to correct its error for thirty days after the order of transfer was signed. *Id.* at 248. We also cited with approval *U.S. Resources, Inc. v. Placke,* 682 S.W.2d 403 (Tex.App.—Austin 1984, orig. proceeding). We applied *Seay* to another general order provision. In particular, although decided in 1992 *Salinas* did not involve the provision the legislature added to the Family Code in 1991, that docketing in the transferee court terminates jurisdiction.

The *Placke* case involved a special statute peculiar to the Lee County District Courts. The statute provided that "Judgments of all such District Courts shall become final on and after the expiration of ten (10) days after the date of judgment, or on and after the day the motion for new trial or amended motion for new trial, if any be filed, is overruled." Relator claimed that a transfer order was a "judgment" and that the statute required any motion to set it aside to be decided in ten days. The court of appeals agreed a transfer order was a "judgment" under the statute,

---

6. Tex.Fam.Code § 11.05(h) (Supp.1995) provides:
   During the transfer of a suit affecting the parent-child relationship from a court with continuing jurisdiction, the transferring court retains jurisdiction to enter temporary orders. The jurisdiction of the transferring court terminates on the docketing of the case in the transferee court. The transferring court's local registry shall continue to receive, record, and disburse child sup-

port payments to the payee until receipt of notice that the transferred case has been docketed by the transferee court. After receipt of notice of docketing, the transferring court's local registry shall send a certified copy of the child support payment record to the clerk of the transferee court and shall forward any payments received to the transferee court's local registry.

but held that to harmonize the statute with rules of civil procedure existing when it was passed, "If a motion for new trial or similar motion is filed, Rule 329b gives the trial court thirty (30) days after the judgment to act upon timely filed motions for new trial or similar motions." *Placke*, 682 S.W.2d at 405. The court stated that the mere word "transfer" implied the order was not effective until it became final, but that the statute (absent a new trial or similar motion) could shorten the finality period. *Id.*

*Placke* is similar to the present case, in that an unambiguous statute expressly shortens the time to when the case is docketed in the transferee court. When we give that statute effect, the *Seay* rationale no longer applies to Family Code parent-child case transfers. *Seay* still applies to statutes merely stating "transfer" orders, such as were presented in *Salinas* and *Placke*. Ms. Bigham argues that both the thirty days and docketing must have occurred for the transferring court to lose jurisdiction. Consistent with the new statute, we hold that the transferring court loses jurisdiction when the transferee court dockets the case, whenever that may be. *Seay* no longer applies even if the thirty-day period has expired, because the new statutory scheme expressly provides. "During the transfer ... the transferring court retains jurisdiction to enter temporary orders." [7]

■ Ms. Bigham's second argument is that a number of the Family Code transfer provisions (which we reproduce in full in the margin) [8] require that docketing occur only after the full file of original documents or certified copies have been supplied *by the transferring clerk*, and that certified copies from parties, as from Mr. Bigham here, may not be the basis for "docketing." She urges we must read these provisions into the definition of "docketing" for section 11.05(h).

■ We cannot agree that the jurisdiction of the court turns on whether, or with what diligence, a clerk performs a ministerial duty to forward court documents. The Family Code places a ministerial duty on both the judge and the clerk of the transferring court to expedite the transfer of records to the transferee court. Section 11.06(j) provides (emphasis added) "[t]he court transferring a proceeding *shall send* to the proper court in the county to which transfer is made *the complete files* in all matters *affecting the child*, certified copies of all entries in the minutes," and other specifically designated records. Although it refers to the receipt of all files, the apparent purpose of section 11.06(m) is not to delay jurisdiction in the transferee court until it receives all files, but to *require* the clerk of the transferee court to declare the suit docketed after all files have been received. Likewise, section 11.05(h) provides for the transferring court to have jurisdiction "[d]uring the transfer" to insure that some court may make temporary orders, and to make clear that the transferring court must continue to collect and disburse child support payments until the transfer is acknowledged as complete by "receipt of notice of docketing" from the transferee court. All these provisions may be harmonized to be

7. TEX.FAM.CODE § 11.05(h) (Supp.1995).

8. TEX.FAM.CODE § 11.06(j), (m) (Supp.1995) provide:

(j) The court transferring a proceeding shall send to the proper court in the county to which transfer is made the complete files in all matters affecting the child, certified copies of all entries in the minutes, a certified copy of any decree of dissolution of marriage issued in a suit joined with the suit affecting the parent-child relationship, and certified copies of each order issued. The transferring court shall keep a copy of the transferred files. If the transferring court retains jurisdiction of another child who was the subject of the suit, the court shall send a copy of the complete files to the court to which the transfer is made and shall keep the original files. If an order has been rendered or writ has been issued ordering payment of child support to the local registry of the transferring court, that court shall render an order that all future payments be made to the local registry of the transferee court. The clerk of the transferring court shall send a certified copy of the order directing payments to the transferee court to any party or employer affected by that order and to the local registry of the transferee court.

\* \* \* \* \* \*

(m) On receipt of the files, documents, and orders from the transferring court, the clerk of the transferee court shall docket the suit and shall notify all parties, the clerk of the transferring court, and the transferring court's local registry that the suit has been docketed.

consistent with our principle of construction that if possible we avoid giving rules or statutes a reading that makes jurisdiction turn on whether a clerk performs a ministerial duty. *See McRoberts v. Ryals*, 863 S.W.2d 450, 452–53 & 453 n. 4 (Tex.1993).

Going to the legislative history of the act [9] which placed the new statutes in the Family Code further persuades us our conclusions are correct. The statute began as a bill to address concerns that child support payments were being lost and delayed in the transfer process with different courts treating the support orders inconsistently, and the original version of the bill provided that each of the transferring and transferee courts had concurrent jurisdiction "to facilitate the transfer." [10] The House amendments changed this provision, apparently to avoid the danger of conflicting orders from courts with overlapping jurisdiction. Nothing in the legislative history, however, suggests any purpose other than expediting the transfer of parent-child relationship cases and providing for coordinated transitions so that child support obligations were not lost or delayed in the process. The definition of "docketing" should be consistent with this purpose of expediting the transfer process. We conclude that a transfer case is "docketed" when the traditional legal meaning of the event has occurred, rather than when all certified document copies have been ministerially sent (expressly by the clerk, not someone else) or other limitations urged by Ms. Bigham have been met.

The term "docketed" in our jurisprudence has the connotation not only of the clerk's formally placing the case on the list of cases pending in the court, but also of notice that the court is ready to act on the matter, to take jurisdiction over it. *See Plains Growers, Inc. v. Jordan*, 519 S.W.2d 633, 635–36 (Tex.1974); *Butcher v. Tinkle*, 234 S.W.2d 285, 286–87 (Tex.Civ.App.—Galveston 1950, writ ref'd n.r.e.). After being given a certified copy of the transfer order, the clerk of the 155th court noted it in the court's docket. The court proceeded to act on the case. Judge Beck specifically recites in his order the finding that the matter was docketed in his court, applying those traditional notions.[11] We find no abuse of discretion in his finding, and hold it is consistent with the relevant Family Code provisions. The rule is that the case is docketed when the court to which it is transferred has received a certified copy of the transfer order and asserts jurisdiction, or when all files have been transferred, whichever occurs first. We hold that the Fayette County 155th Court has continuing exclusive jurisdiction over the children. For the foregoing reasons, we conditionally grant the writ of mandamus for Mr. Bigham, and deny relief to Ms. Bigham.

Justice GONZALEZ, joined by Justice SPECTOR and Justice OWEN, dissenting.

The Court today creates uncertainty in an area that demands certainty, and allows venue shopping in child custody proceedings. The Court also creates the potential for par-

---

**9.** Act of May 24, 1991, 72nd Leg., R.S., ch. 458, 1991 Tex.Gen.Laws 1662 (S.B. No. 1333, entitled "An Act relating to the transfer of suits affecting the parent-child relationship and court-ordered and administrative withholding from earnings to enforce the child support orders.").

**10.** Senate Comm. on State Affairs, Bill Analysis, Tex. S.B. 1333, 72nd Leg., R.S. (1991).

**11.** Judge Beck's order states this finding:

This Court has continuing, exclusive jurisdiction of this cause as it was transferred from Harris County to this Court by order of the Honorable Bill Elliott on December 19, 1994. A certified copy of the written order of transfer was received by the district clerk of Fayette County on December 29, 1994. On January 4, 1995, a motion for emergency relief relating to the welfare of the Kenneth Noble Bigham, III

and Martin Lewis Bigham, the children who are subject to this Court's continuing jurisdiction, was presented to this Court. Also on January 4, 1995, the clerk of the Court assigned the transferred cause a number and docketed the cause in the 155th Judicial District Court of Fayette County. The Court then issued a Temporary Restraining Order to prevent injury to the children through their removal from Fayette County and set the matter for hearing on January 18, 1995 at 1:15 p.m. . . . The court accordingly finds that Cause No. 93–42703, previously pending in Harris County, was transferred by written order of December 19, 1994, to Fayette County and that this Court became the court of continuing jurisdiction upon its assumption of jurisdiction over the children and the docketing of the transferred cause as number 95–V002 in the 155th Judicial District Court.

ties to manipulate venue when it holds that one of the litigants, rather than the court clerk, may execute the order transferring venue. Because the Court undermines the legislature's goal that the determination of venue questions in child custody matters be swift and certain and because the case was not properly docketed in Fayette County, I dissent.

In June 1994, the 311th District Court in Harris County (Judge Elliott) rendered the Bighams' decree of divorce, establishing Harris County as the children's county of residence. The next month, Mr. Bigham filed a motion to modify the terms of the divorce decree in that court, seeking sole authority to establish the children's domicile. At the same time, Mr. Bigham sought and received temporary orders allowing him to move with the children to Fayette County.

**More than four months later,** Mr. Bigham filed a motion asking the 311th District Court in Harris County to transfer venue of the suit to a court in Fayette County. Ms. Bigham opposed Mr. Bigham's motion to transfer venue on the grounds that the motion was not timely. Nonetheless, the trial court ordered the case transferred to the district court in Fayette County.

Judge Elliott signed the order transferring venue from Harris County on December 19, 1994, shortly before his retirement as judge of the 311th District Court. Mr. Bigham's attorneys, not content to wait for the Harris County court clerk to transfer the file in the normal course of business, filed a certified copy of the venue transfer order with the Fayette County clerk's office. Judge Elliott's successor, Judge Henderson, assumed the bench on January 1, 1995. On January 4, 1995, the Fayette County district court clerk made a notation "docketing" the transferred case. The next day, Judge Henderson instructed the Harris County court clerk not to send the case file to Fayette County. Judge Henderson issued an order setting aside the transfer order within the thirty-day period of his court's plenary power, but by that time, according to the Court today, the Fayette County court had wrested jurisdiction from Harris County by entertaining a motion for temporary orders.

Judge Elliott had no authority to transfer the case. Section 11.04 of the Texas Family Code governs venue in suits affecting the parent-child relationship to the exclusion of the general venue statutes, and section 11.06 of the Family Code supersedes the rules of procedure generally applicable in civil cases. *Leonard v. Paxson,* 654 S.W.2d 440, 441 (Tex.1983). Section 11.04 provides that a suit affecting the parent-child relationship must be tried in the county in which the child resides. TEX.FAM.CODE § 11.04(a). The reason for the rule is that the current circumstances of the child can best be shown in the county where the child resides. *Cassidy v. Fuller,* 568 S.W.2d 845, 847 (Tex.1978).

Section 11.06 of the Family Code sets forth the limited circumstances which permit a court to transfer venue. Section 11.06(f) provides that a motion to transfer is timely **only if it is filed at the time the initial pleadings are filed** in a suit affecting the parent-child relationship. It seems apparent that the purpose of that rule is to prevent a party from forum shopping by manipulating the circumstances after suit has been filed to qualify for a venue transfer. *See Cassidy,* 568 S.W.2d at 847 (holding that the purpose of making venue proper in county in which the child has resided for six months is to prevent forum shopping).

The order to transfer venue in this case states that the sole grounds for transfer was "the convenience of the parties and witnesses and in the interest of justice." Section 11.06(d) allows a transfer for "the convenience of the parties and witnesses and in the interest of justice . . . on the timely motion of any party." TEX.FAM.CODE § 11.06(d) (emphasis added). Mr. Bigham filed his motion to modify custody on July 21, 1994, but he did not file his motion to transfer venue until November 7, 1994. Therefore, Mr. Bigham's motion to transfer was untimely. No other provision of the Family Code authorizes a transfer under these circumstances.

Thus, Judge Elliott had no authority under the Family Code to order the transfer. Ms. Bigham had the right to try the case in Harris County. However, that right is illusory if she can vindicate it, if at all, only after

a trial and an appeal. In *Proffer v. Yates,* 734 S.W.2d 671 (Tex.1987), the trial court refused to grant a motion to transfer venue when it was undisputed that the child had resided for six months in another county at the time the suit was filed. We said:

> Transfer of a case to a county where the child has resided for more than six months is a mandatory ministerial duty under section 11.06(b). And remedy by appeal, though available, is frequently inadequate to protect the rights of parents and children to a trial in a particular venue. Parents and children who have a right under the mandatory venue provisions to venue in a particular county should not be forced to go through a trial that is for naught. Justice demands a speedy resolution of child custody and child support issues.

*Id.* at 673. Under today's opinion Ms. Bigham will be forced to wait until appeal to enforce her right to try the suit in Harris County, the only proper venue under the Family Code.

Ms. Bigham did not immediately seek mandamus when the Harris County district court made its erroneous decision to transfer venue to Fayette County. Instead, she took the reasonable first step of trying to convince the trial court that had plenary power to correct the error. This Court today cuts off that avenue of relief, however, by holding that an interested party has the unilateral power to terminate the transferring court's jurisdiction before it can correct its own mistake.

I disagree with the Court that, as the case is presently postured, Ms. Bigham is not entitled to mandamus relief on the basis of the untimely motion to transfer. Because I am of the view that the only court that can properly exercise jurisdiction is in Harris County, we have the power to settle the tug of war between the two courts. Therefore, this Court should issue a writ of mandamus against the judge in Fayette County, ordering him to cease and desist from any further action so as to allow the case to proceed in Harris County. Even if mandamus should not issue for this reason, mandamus should issue because the case was not properly docketed in Fayette County.

The Court concludes that a case is "docketed," as that term is used in section 11.05(h) of the Family Code, when a party files a certified copy of a transfer order, and the transferee court asserts jurisdiction in the case. 901 S.W.2d at 426. However, the Family Code indicates a legislative intent that a case is not transferred until the **clerk** sends the **entire file** to the transferee court. *See* TEX.FAM.CODE §§ 11.05(h), 11.06(j)–(k).

Family Code Section 11.05(h) provides that during transfer, the transferring court retains jurisdiction to enter temporary orders, and its jurisdiction terminates "on the docketing of the case in the transferee court...." TEX.FAM.CODE § 11.05(h) (Supp.1995). Section 11.06(j) of the Family Code provides, "The **Court** transferring a proceeding shall send to the proper court in the county to which transfer is made **the complete files** in all matters affecting the child...." (Emphasis added.) Thus, it is the transferring court's duty, acting through its clerk, to send complete files.

Section 11.06(k) of the Family Code provides that the "court to which a transfer is made becomes the court of continuing jurisdiction, and all proceedings in the suit are continued as if it were brought there originally." Specifically, the transferee court has the power to enforce the decrees and orders rendered previously in the transferring court by contempt. TEX.FAM.CODE § 11.06(k). If the transferee court has only the transfer order in its file, it cannot possibly know the history of the case and proceed as if the case "were brought there originally."

Allowing one of the parties to deliver the file that opens the case in the transferee court invites abuse. A party who received unfavorable rulings from the transferring court in the past will have every incentive to file only the transfer order with the transferee court. This Court states that a transfer of venue should not depend on the ministerial act of a court clerk, yet is unconcerned that it gives an interested party control over venue, jurisdiction, and the very contents of the trial court's file. A neutral official of the court, who does not have a stake in the outcome of the litigation, should be the sole person entrusted with the responsibility of providing

the transferee court with an accurate and complete file.

The legislature never contemplated a system in which venue is decided in favor of the party who can exert the most legal effort and win the race to the courthouse.[1] In this case, the Bigham children legally resided in Harris County when Mr. Bigham convinced the trial court that it should issue "temporary" orders moving the children to Fayette County. After a few months, Mr. Bigham successfully argued that the case should be transferred to Fayette County, because that was where the children resided. This is the very kind of forum shopping the legislature sought to forestall by requiring courts to decide venue on the facts existing at the time of the initiation of suit. The Court rewards this manipulation of venue by holding that a party has the power to terminate jurisdiction in the transferring court before the court can recognize and correct its error.

While many of life's rewards go to the swift, a race to the courthouse is not a sensible method of establishing venue in child custody cases. For these reasons, I dissent.

---

1. Mr. Bigham, himself an attorney, has at various times in these proceedings retained as counsel a former Chief Justice of the Supreme Court of Texas, three former Justices, one of whom was also a State Senator, two other former State Senators, one of whom was also a Railroad Commissioner, and six other attorneys.