## In re CREDIT SUISSE FIRST BOSTON MORTGAGE CAPITAL, L.L.C. and Credit Suisse First Boston, L.L.C., Relators.

### No. 14-08-00132-CV.

Court of Appeals of Texas, Houston (14th Dist.).

June 17, 2008.

---

H. Victor Thomas, Reginald Ross Smith, Penn Christopher Huston, Reagan W. Simpson, Houston, TX, for relator.

David J. Beck, Troy Ray Ford, Constance H. Pfeiffer, Houston, TX, for real party in interest.

Panel consists of Chief Justices HEDGES, Justice BOYCE, and Senior Justice HUDSON.*

**OPINION**

ADELE HEDGES, Chief Justice.

Relators Credit Suisse First Boston Mortgage Capital, L.L.C. ("Mortgage Capital") and Credit Suisse First Boston, L.L.C. ("CSFB") ask us to issue a writ of mandamus requiring the respondent[1] to enforce a contractual jury waiver. Mortgage Capital and the real party in interest signed a contract containing a jury waiver clause. CSFB did not sign the contract. The trial court applied the clause to the real party in interest's claims against signatory Mortgage Capital, but refused to apply the clause to claims against nonsignatory CSFB. We hold that the clause does not reach claims against nonsignatory CSFB. We decline CSFB's invitation to use direct-benefits equitable estoppel as a mechanism for extending a contractual jury waiver's reach to encompass claims against a nonsignatory. Therefore, we deny the petition for writ of mandamus.

---

* Senior Justice Hudson sitting by assignment.

1. The Honorable Elizabeth Ray, presiding judge of the 165th Judicial District Court of Harris County, Texas.

## BACKGROUND

The real party in interest is 1001 McKinney Ltd. (the "Developer"), a real-estate development partnership formed to renovate a downtown Houston office building. To fund the renovation, Developer sought and obtained a loan in excess of $39 million from relators Mortgage Capital and CSFB. Developer and Mortgage Capital—but not CSFB—signed a written Loan Agreement on June 16, 1998, that included a jury waiver clause. After signing the Agreement, Developer encountered cost overruns that exceeded the original loan, prompting a redesign of the building project. Developer approached relators for additional financing, and, according to Developer, employees of Mortgage Capital and CSFB made several oral promises to loan an additional $6.75 million. The existence and terms of this alleged second loan never were reduced to writing.

For reasons that are unrelated to this proceeding, relators later declined to loan any additional money. Developer responded by filing suit against Mortgage Capital and amending to add CSFB as an additional defendant. Following a summary judgment that was affirmed in part and reversed in part by this court,[2] Developer's only remaining cause of action against relators is one for common-law fraud.

Several years after the lawsuit was filed, and shortly before the trial setting, relators moved to enforce the jury waiver clause and requested a bench trial on Developer's remaining fraud claims against Mortgage Capital and CSFB. The trial court granted the request as to Developer's claims against Loan Agreement signatory Mortgage Capital but denied the motion as to nonsignatory CSFB. The re-spondent's February 20, 2008 order recites that a single trial will be conducted. The fraud claim against CSFB will be tried to the jury, while the fraud claim against Mortgage Capital will be tried simultaneously to the bench. This mandamus action ensued.

Relators advance four arguments in this proceeding. First, they argue that Developer's claims against CSFB are covered by the broad language of the waiver clause. Second, they urge us to extend the arbitration doctrine of direct-benefits equitable estoppel to jury waiver provisions. Third, they contend that agency principles allow the nonsignatory to rely upon the clause. Fourth, they assert that Mortgage Capital, by virtue of its status as a contract signatory, has standing to enforce the waiver on behalf of CSFB.

## STANDARD OF REVIEW

To obtain mandamus relief, relators must demonstrate that the trial court clearly abused its discretion and that they have no adequate remedy by appeal. *In re Sw. Bell Tel. Co.*, 226 S.W.3d 400, 403 (Tex.2007) (orig.proceeding). A trial court has no discretion in determining what the law is, or in applying the law to the facts; therefore, a clear failure by the trial court to analyze or apply the law correctly constitutes an abuse of discretion. *Walker v. Packer*, 827 S.W.2d 833, 840 (Tex.1992) (orig.proceeding).

In construing a written contract, our primary concern is to ascertain and give effect to the parties' intentions as expressed in the instrument. *See Appleton v. Appleton*, 76 S.W.3d 78, 84 (Tex. App.-Houston [14th Dist.] 2002, no pet.). A contract is not necessarily ambiguous

---

**2.** *1001 McKinney Ltd. v. Credit Suisse First Boston Mortgage Capital,* 192 S.W.3d 20 (Tex. App.-Houston [14th Dist.] 2005), pet. denied.

merely because the language is unclear or uncertain. *Id.* Rather, a contract is ambiguous when it is subject to two or more reasonable interpretations. *See id.* Courts should not strain to find ambiguity in a contract if such an exercise would defeat the parties' probable intent. *Id.* If a contract can be given a definite legal meaning or interpretation, then it is not ambiguous and will be construed as a matter of law. *See id.; In re Wells Fargo Bank Minn. N.A.,* 115 S.W.3d 600, 604 (Tex.App.-Houston [14th Dist.] 2003, orig. proceeding).

## CONSTRUCTION OF JURY WAIVER CLAUSE

■ In 2003, we held, as a matter of first impression, that Texas law does not prohibit a party from contractually waiving its constitutional right to a trial by jury. *See Wells Fargo,* 115 S.W.3d at 607–08. The Supreme Court subsequently held that contractual jury waiver clauses are enforceable. *In re Prudential Ins. Co. of America,* 148 S.W.3d 124, 132–33 (Tex. 2004) (orig.proceeding). Unlike arbitration agreements, which are strongly favored under Texas law, the right to a jury trial is so strongly favored that contractual jury waivers are strictly construed and will not be lightly inferred or extended. *Id.* at 132–33 n. 26. Before a jury waiver will be enforced, such waiver must be found to be a voluntary, knowing, and intelligent act that was done with sufficient awareness of the relevant circumstances and likely consequences. *Id.* at 132 (citing *Brady v. United States,* 397 U.S. 742, 748, 90 S.Ct. 1463, 25 L.Ed.2d 747 (1970)).

Relators argue that the jury waiver provision here is so broadly worded that it meets that heavy burden, even as to De-

veloper's claims against nonsignatory CSFB. Developer responds that every reasonable presumption should be indulged against finding waiver of a fundamental constitutional right, and that the clause in question does not cover Developer's unrelated claims against an unnamed third party.

■ The jury waiver clause in question, which is found in Paragraph 6.19 of the Loan Agreement, provides as follows:

> EACH OF BORROWER AND LENDER HEREBY KNOWINGLY, VOLUNTARILY AND INTENTIONALLY WAIVE ANY AND ALL RIGHTS IT MAY HAVE TO A TRIAL BY JURY IN RESPECT OF ANY LITIGATION BASED ON, OR ARISING OUT OF, UNDER, OR IN CONNECTION WITH, THIS AGREEMENT, THE MORTGAGE, THE CASH MANAGEMENT AGREEMENT OR ANY OTHER LOAN DOCUMENT, OR ANY COURSE OF CONDUCT, COURSE OF DEALING, STATEMENTS (WHETHER VERBAL OR WRITTEN), OR ACTIONS OF BORROWER, GENERAL PARTNER OR LENDER RELATING TO THE LOAN AND/OR THE LENDING RELATIONSHIP WHICH IS THE SUBJECT OF THIS AGREEMENT.

■ Relators argue that this clause applies to "any litigation based on, or arising out of ... the lending relationship," and that Developer's claims against CSFB arise out of the original lending relationship between Developer and Mortgage Capital. We must read the clause as a whole, rather than isolating a certain word, phrase, or sentence.[3] *See Coastal Chem,*

---

3. The mandamus record filed by relators does not include a copy of the entire Loan Agreement. Instead, we have been given a copy of the title page to the Agreement, page 65 (which contains the jury waiver clause in

*Inc. v. Brown*, 35 S.W.3d 90, 94 (Tex.App.-Houston [14th Dist.] 2000, pet. denied). Read as a whole, this clause expressly contemplates two separate categories of litigation claims.

The first category of claims described by Paragraph 6.19 comprises those claims we may summarize as the "document-based claims," and includes all litigation relating to the Loan Agreement, cash management agreement, or any other loan documents concerning the original $39.5 million loan that was the subject of the Loan Agreement. Because CSFB did not sign these documents, claims against it do not fall within "document-based claims."

 The second category of claims described by Paragraph 6.19 comprises "conduct-based claims" including courses of conduct or dealing, statements, and actions of the "BORROWER" or the "LENDER" that relate to the original loan or to the lending relationship. Fraud claims such as those advanced by Developer, which rely upon verbal statements alleged to have been untrue when uttered, arguably fall into this category. However, Paragraph 6.19 applies only to conduct of the "BORROWER" or the "LENDER." [4] On the signature page to the Loan Agreement, the "BORROWER" is identified as "1001 MCKINNEY LTD." The "LENDER" is named as "CREDIT SUISSE FIRST BOSTON MORTGAGE CAPITAL, LLC." The term "LENDER" does not mention Credit Suisse First Boston, L.L.C., and Paragraph 6.19 does not expressly include the conduct of any "affiliate" to the contracting parties. We cannot redraft the terms of this contract to impose additional terms. *See Fein v. R.P.H.,*

*Inc.*, 68 S.W.3d 260, 267 (Tex.App.-Houston [14th Dist.] 2002, pet. denied).

Developer's fraud claim against "LENDER" Mortgage Capital is expressly included in Paragraph 6.19. Therefore, Developer has contractually waived its right to have those claims tried to a jury. However, Paragraph 6.19 does not unambiguously evidence a knowing and voluntary waiver of Developer's fraud claim against nonsignatory CSFB. We hold that the trial court did not abuse its discretion in interpreting the jury waiver clause so as to exclude Developer's fraud claim against nonsignatory CSFB. Accordingly, we overrule relators' first issue.

## EQUITABLE ESTOPPEL

In their second issue, relators argue that the trial court abused its discretion by refusing to apply direct-benefits equitable estoppel to Developer's fraud claim against CSFB. In the arbitration context, the area in which direct-benefits estoppel has been most frequently applied, a nonsignatory may be able to enforce an arbitration provision against a contract signatory that "seeks, through the claim, to derive a direct benefit from the contract containing the arbitration provisions." *In re Weekley Homes, L.P.*, 180 S.W.3d 127, 131 (Tex. 2005) (orig.proceeding). Relators' rationale is that Developer must rely upon the existence and terms of the Loan Agreement in proving its common-law fraud claims against CSFB; therefore, they assert that the jury waiver clause contained in the contract signed by Developer should apply to Developer's fraud claim against nonsignatory CSFB. Developer responds

---

. paragraph 6.19), and the parties' signature page.

**4.** The "GENERAL PARTNER" mentioned in Paragraph 6.19 refers to Developer's General

Partner (McKinney Interests, Inc.). CSFB is not identified anywhere on the signature page.

that its claims arise outside of, and do not depend upon, the Agreement.

■■■ We decline to recognize direct-benefits estoppel as a vehicle by which a jury waiver clause may be applied to claims against a party that did not sign the contract containing the clause. We are unaware of any court, in Texas or elsewhere, that has applied direct-benefits estoppel to a jury waiver provision.[5] We recognize that Texas courts have occasionally referenced arbitration principles in deciding jury-waiver issues. *See Prudential,* 148 S.W.3d at 131; *Wells Fargo,* 115 S.W.3d at 607. However, these occasional references do not signal a departure from the longstanding principle that jury waivers are disfavored in Texas. Nor can *Prudential* or *Wells Fargo* be read as placing jury-waiver provisions on the same footing as arbitration clauses. These mechanisms cannot be treated interchangeably merely because they both lead to decisions by factfinders other than jurors. Jury waiver provisions and arbitration clauses implicate significantly different policies and principles.

In upholding parties' freedom to contract, the Texas Supreme Court noted that arbitration agreements—which are strongly favored—allow parties to contractually opt out of the civil justice system altogether.[6] *Prudential,* 148 S.W.3d at 131. The use of arbitration *as an example* of contractual waiver should not be read as a statement that, henceforth, jury waivers are to be analyzed interchangeably with arbitration agreements. *See Mikey's Houses LLC v. Bank of America, N.A.,* 232 S.W.3d 145, 151 (Tex. App.-Fort Worth 2007, mand. pending) ("The standards governing the enforceability of arbitration clauses are inapplicable to prelitigation contractual jury waiver provisions[.]").

Our sister court in Fort Worth recently outlined several reasons why arbitration agreements differ from contractual jury-waiver clauses:

- Public policy favors arbitration; the same cannot be said of the waiver of constitutional rights.
- Although statutes generally require courts to compel contractual arbitration, no comparable statutory mandate

---

**5.** Relators rely on four cases from other jurisdictions for the proposition that direct-benefits estoppel has been extended to contractual jury waivers. *See Powers v. Lazy Days RV Ctr., Inc.,* 2006 WL 1890188 (M.D.Fla. July 10, 2006); *In re DaimlerChrysler AG Sec. Litig.,* 2003 WL 22769051 (D.Del. Nov.19, 2003); *Leav v. Weitzner,* 268 A.D. 466, 51 N.Y.S.2d 775 (N.Y.App.Div.1944); *Okura & Co. (America), Inc. v. Careau Group,* 783 F.Supp. 482 (C.D.Cal.1991). We are not persuaded by these authorities.

The *Powers* court had already concluded that the plaintiff had no right to a jury trial on its claims, and its resolution did not turn upon the application of equitable estoppel. *See Powers,* 2006 WL 1890188, at *2. Likewise, the Delaware federal court had already found the jury waiver enforceable on other grounds besides estoppel. *See DaimlerChrysler,* 2003 WL 22769051, at *2–3. Moreover,

the court applied the "substantially interdependent and concerted misconduct" theory of equitable estoppel, which has been rejected by the Texas Supreme Court. *See In re Merrill Lynch Trust Co.,* 235 S.W.3d 185, 191 (Tex.2007) (orig.proceeding). In *Leav,* the New York court concluded that the broadly-worded waiver provision applied to the plaintiff's complaints, and its apparent (although not express) application of estoppel would be dicta. *See Leav,* 51 N.Y.S.2d at 777–78. Finally, the Central District of California neither mentioned nor applied equitable estoppel, concluding instead that the parties had entered into a knowing, intentional, and voluntary waiver. *See Okura & Co.,* 783 F.Supp. at 489–91.

**6.** *See also Wells Fargo,* 115 S.W.3d at 607 ("Texas allows parties to contractually waive the right to a jury trial by enforcing arbitration agreements.").

directs courts to enforce contractual jury trial waivers.

- Application of the standards for enforcing arbitration clauses would conflict with the *Brady* "knowing and voluntary" standard that the Texas Supreme Court adopted in *In re Prudential.*
- "A distinction exists between an agreement to resolve disputes out of court and an agreement to resolve disputes in court but to waive constitutional aspects of that in-court resolution."

*Id.* at 151–52.

■ The right to a trial by jury is "one of our most precious rights," and holds "a sacred place" in our history. *General Motors Corp. v. Gayle,* 951 S.W.2d 469, 476 (Tex.1997) (orig.proceeding). Restrictions placed on that right will therefore be subject to "utmost scrutiny." *Bell Helicopter Textron, Inc. v. Abbott,* 863 S.W.2d 139, 141 (Tex.App.-Texarkana 1993, writ denied). If relators are correct that Developer cannot prove its fraud claims against CSFB without at least *referencing* the terms of the Loan Agreement, the application of direct-benefits estoppel here would coerce Developer into a non-jury trial of its claims against CSFB. We have already concluded that Developer did not knowingly and voluntarily waive its rights to a jury trial with respect to its claims against nonsignatory CSFB, and we will not use equitable estoppel as a vehicle to circumvent the required "knowing and voluntary" waiver standard. *See Prudential,* 148 S.W.3d at 132.

We overrule relators' second issue.

## AGENCY PRINCIPLES

■ In their third issue, Relators contend that CSFB may enforce the waiver clause because Developer has alleged an agency relationship between CSFB and Mortgage Capital. Developer denies that its pleadings set forth an agency relationship between the two entities;[7] rather, it has pled agency as between the relators and the employees who purportedly uttered the fraudulent statements in question.

The mandamus record does not show that this agency argument was presented to or considered by the trial court. Therefore, we do not consider it. *See* Tex. R.App. P. 33.1(a); *Bigham v. Dempster,* 901 S.W.2d 424, 426 n. 3 (Tex.1995) (orig.proceeding); *In re Bath Junkie Franchise, Inc.,* 246 S.W.3d 356, 367 (Tex. App.-Beaumont 2008, orig. proceeding).

## STANDING

In their fourth issue, relators assert that Mortgage Capital, as a contract signatory, has standing to enforce the clause on behalf of CSFB. This contention, which rests upon relators' broad interpretation of Paragraph 6.19, largely echoes relators' first issue. Because we have already concluded that the waiver clause does not apply to Developer's fraud claims against nonsignatory CSFB, we need not reach the issue of whether Mortgage Capital has legal standing to enforce the clause in favor of its nonsignatory affiliate.

## CONSOLIDATION

■ Finally, relators insist in the alternative that—even if the claims against CSFB are to be tried by a jury—the respondent abused her discretion in ordering that both trials *occur simultaneously.* Because the record does not indicate that

---

7. Although the relationship between the relators (described only as "affiliates") is unclear, CSFB is alleged to originate real estate development loans in which Mortgage Capital acts as the funding entity.

relators objected in the trial court to the consolidation, we therefore decline to issue mandamus relief on this ground. *See* Tex. R.App. P. 33.1(a). Even if we were to address this issue on the merits, our resolution of this issue would remain the same.

A trial court has the inherent power to control the resolution of cases on its docket and is granted wide discretion to conduct trial as it sees fit. *Dow Chemical Co. v. Francis*, 46 S.W.3d 237, 240 (Tex. 2001). Nothing about this case suggests that the respondent abused her discretion in determining that both trials could be held together and that different procedures could fairly apply to both trials. *See In re C–Span Entm't, Inc.*, 162 S.W.3d 422, 429 (Tex.App.-Dallas 2005, orig. proceeding) (declining mandamus relief where a jury-waiver ruling resulted in a simultaneous bench trial and jury trial).

Relators' argument is grounded upon their assumption that the application of direct-benefits estoppel would create a situation in which the Loan Agreement would be admissible in the *non-jury* trial against Mortgage Capital, but inadmissible in the *jury* trial of Developer's claims against CSFB. They argue further that the inconsistent admissibility of the Loan Agreement in trials conducted simultaneously would almost certainly invite jury confusion, citing *In re Van Waters & Rogers, Inc.*, 145 S.W.3d 203, 211 (Tex.2004) (orig.proceeding).

Although the parties appear to equate *reliance on* the Loan Agreement with *admissibility of* the Agreement, we do not necessarily agree that the two concepts are automatically linked. It is conceivable that—were direct-benefits estoppel to apply—the Agreement could be admissible for contextual purposes, without being necessary to the Developer's fraud claim. We do not purport here to invade the trial court's broad discretion to determine the admissibility of evidence. *See Halim v. Ramchandani*, 203 S.W.3d 482, 488 (Tex. App.-Houston [14th Dist.] 2006, no pet.). Even were we to indulge the parties' assumption that admissibility is dictated by reliance, this issue was predicated on the thought that we would apply direct-benefits estoppel to Developer's claims. We have declined to do so, and therefore need not reach this issue.

Most consolidation orders do not threaten a defendant's substantial rights such that an ordinary appeal becomes inadequate; therefore, mandamus typically does not lie from a trial court's consolidation order. *See Van Waters & Rogers*, 145 S.W.3d at 211. This case does not present such extraordinary circumstances justifying mandamus relief.

Accordingly, we deny the petition for writ of mandamus.