Petition for Writ of Mandamus Denied, and Opinion filed June 17, 2008








 

Petition
for Writ of Mandamus Denied, and Opinion filed June 17, 2008.

 

In The

 

Fourteenth Court of
Appeals

____________

 

NO. 14-08-00132 -CV

____________

 

IN RE CREDIT SUISSE FIRST BOSTON MORTGAGE CAPITAL,
L.L.C.

and CREDIT SUISSE FIRST BOSTON, L.L.C., Relators

 

 



 

ORIGINAL
PROCEEDING

WRIT OF MANDAMUS

 



 

O P I N I
O N








Relators
Credit Suisse First Boston Mortgage Capital, L.L.C. (AMortgage Capital@)  and Credit Suisse First Boston, L.L.C.
(ACSFB@) ask us to issue a writ of mandamus
requiring the respondent[1] to enforce a
contractual jury waiver.  Mortgage Capital and the real party in interest
signed a contract containing a jury waiver clause.  CSFB did not sign the
contract.  The trial court applied the clause to the real party in interest=s claims against signatory Mortgage
Capital, but refused to apply the clause to claims against nonsignatory CSFB. 
We hold that the clause does not reach claims against nonsignatory CSFB.  We
decline CSFB=s invitation to use direct-benefits equitable estoppel as a mechanism for
extending a contractual jury waiver=s reach to encompass claims against a
nonsignatory.  Therefore, we deny the petition for writ of mandamus.

BACKGROUND

The real
party in interest is 1001 McKinney Ltd. (the ADeveloper@), a real-estate development
partnership formed to renovate a downtown Houston office building.  To fund the
renovation, Developer sought and obtained a loan in excess of $39 million from
relators Mortgage Capital and CSFB. Developer and Mortgage Capital B but not CSFB B signed a written Loan Agreement on
June 16, 1998, that included a jury waiver clause.  After signing the
Agreement, Developer encountered cost overruns that exceeded the original loan,
prompting a redesign of the building project.  Developer approached relators
for additional financing, and, according to Developer, employees of Mortgage
Capital and CSFB made several oral promises to loan an additional $6.75
million.  The existence and terms of this alleged second loan never were
reduced to writing.

For
reasons that are unrelated to this proceeding, relators later declined to loan
any additional money.  Developer responded by filing suit against Mortgage
Capital and amending to add CSFB as an additional defendant.  Following a
summary judgment that was affirmed in part and reversed in part by this court,[2]
Developer=s only remaining cause of action against relators is one for common-law
fraud.








Several
years after the lawsuit was filed, and shortly before the trial setting,
relators moved to enforce the jury waiver clause and requested a bench trial on
Developer=s remaining fraud claims against Mortgage Capital and CSFB.  The trial
court granted the request as to Developer=s claims against Loan Agreement signatory
Mortgage Capital but denied the motion as to nonsignatory CSFB.  The respondent=s February 20, 2008 order recites
that a single trial will be conducted.  The fraud claim against CSFB will be
tried to the jury, while the fraud claim against Mortgage Capital will be tried
simultaneously to the bench.  This mandamus action ensued.

Relators
advance four arguments in this proceeding.  First, they argue that Developer=s claims against CSFB are covered by
the broad language of the waiver clause.  Second, they urge us to extend the
arbitration doctrine of direct-benefits equitable estoppel to jury waiver
provisions.  Third, they contend that agency principles allow the nonsignatory
to rely upon the clause.  Fourth, they assert that Mortgage Capital, by virtue
of its status as a contract signatory, has standing to enforce the waiver on
behalf of CSFB.

                                                       STANDARD
OF REVIEW

To
obtain mandamus relief, relators must demonstrate that the trial court clearly
abused its discretion and that they have no adequate remedy by appeal.  In
re Sw. Bell Tel. Co., 226 S.W.3d 400, 403 (Tex. 2007) (orig. proceeding). 
A trial court has no discretion in determining what the law is, or in applying
the law to the facts; therefore, a clear failure by the trial court to analyze
or apply the law correctly constitutes an abuse of discretion.  Walker v.
Packer, 827 S.W.2d 833, 840 (Tex. 1992) (orig. proceeding).








In
construing a written contract, our primary concern is to ascertain and give
effect to the parties= intentions as expressed in the instrument.  See Appleton
v. Appleton, 76 S.W.3d 78, 84 (Tex. App.BHouston [14th Dist.] 2002, no pet.). 
A contract is not necessarily ambiguous merely because the language is unclear
or uncertain.  Id.  Rather, a contract is ambiguous when it is subject
to two or more reasonable interpretations.  See id.  Courts should not
strain to find ambiguity in a contract if such an exercise would defeat the
parties= probable intent.  Id.  If a
contract can be given a definite legal meaning or interpretation, then it is
not ambiguous and will be construed as a matter of law.  See id.; In
re Wells Fargo Bank Minn. N.A., 115 S.W.3d 600, 604 (Tex. App.BHouston [14th Dist.] 2003, orig.
proceeding).

                                  CONSTRUCTION
OF JURY WAIVER CLAUSE

In 2003,
we held, as a matter of first impression, that Texas law does not prohibit a
party from contractually waiving its constitutional right to a trial by jury.  See
Wells Fargo, 115 S.W.3d at 607-08.  The Supreme Court subsequently held
that contractual jury waiver clauses are enforceable.  In re Prudential Ins.
Co. of America, 148 S.W.3d 124, 132-33 (Tex. 2004) (orig. proceeding). 
Unlike arbitration agreements, which are strongly favored under Texas law, the
right to a jury trial is so strongly favored that contractual jury waivers are
strictly construed and will not be lightly inferred or extended.  Id. at
132-33 n.26.  Before a jury waiver will be enforced, such waiver must be found
to be a voluntary, knowing, and intelligent act that was done with sufficient
awareness of the relevant circumstances and likely consequences.  Id. at
132 (citing Brady v. United States, 397 U.S. 742, 748 (1970)).

Relators
argue that the jury waiver provision here is so broadly worded that it meets
that heavy burden, even as to Developer=s claims against nonsignatory CSFB. 
Developer responds that every reasonable presumption should be indulged against
finding waiver of a fundamental constitutional right, and that the clause in
question does not cover Developer=s unrelated claims against an unnamed
third party.  

The jury
waiver clause in question, which is found in Paragraph 6.19 of the Loan
Agreement, provides as follows:








EACH OF
BORROWER AND LENDER HEREBY KNOWINGLY, VOLUNTARILY AND INTENTIONALLY WAIVE ANY
AND ALL RIGHTS IT MAY HAVE TO A TRIAL BY JURY IN RESPECT OF ANY LITIGATION
BASED ON, OR ARISING OUT OF, UNDER, OR IN CONNECTION WITH, THIS AGREEMENT, THE
MORTGAGE, THE CASH MANAGEMENT AGREEMENT OR ANY OTHER LOAN DOCUMENT, OR ANY
COURSE OF CONDUCT, COURSE OF DEALING, STATEMENTS (WHETHER VERBAL OR WRITTEN),
OR ACTIONS OF BORROWER, GENERAL PARTNER OR LENDER RELATING TO THE LOAN AND/OR
THE LENDING RELATIONSHIP WHICH IS THE SUBJECT OF THIS AGREEMENT.

Relators
argue that this clause applies to Aany litigation based on, or arising
out of ... the lending relationship,@ and that Developer=s claims against CSFB arise out of
the original lending relationship between Developer and Mortgage Capital.  We
must read the clause as a whole, rather than isolating a certain word, phrase,
or sentence.[3]  See
Coastal Chem, Inc. v. Brown, 35 S.W.3d 90, 94 (Tex. App.BHouston [14th Dist.] 2000, pet.
denied).  Read as a whole, this clause expressly contemplates two separate categories
of litigation claims. 

The
first category of claims described by Paragraph 6.19 comprises those claims we
may summarize as the Adocument-based claims,@ and includes all litigation relating
to the Loan Agreement, cash management agreement, or any other loan documents
concerning the original $39.5 million loan that was the subject of the Loan
Agreement.  Because CSFB did not sign these documents, claims against it do not
fall within Adocument-based claims.@  








The
second category of claims described by Paragraph 6.19 comprises Aconduct-based claims@ including courses of conduct or
dealing, statements, and actions of the ABORROWER@ or the ALENDER@ that relate to the original loan or
to the lending relationship.  Fraud claims such as those advanced by Developer,
which rely upon verbal statements alleged to have been untrue when uttered,
arguably fall into this category.  However, Paragraph 6.19 applies only to
conduct of the ABORROWER@ or the ALENDER.@[4]  On the signature page to the Loan Agreement, the ABORROWER@ is identified as A1001 MCKINNEY LTD.@  The ALENDER@ is named as ACREDIT SUISSE FIRST BOSTON MORTGAGE
CAPITAL, LLC.@  The term ALENDER@ does not mention Credit Suisse First Boston, L.L.C., and
Paragraph 6.19 does not expressly include the conduct of any Aaffiliate@ to the contracting parties.  We
cannot redraft the terms of this contract to impose additional terms.  See
Fein v. R.P.H., Inc., 68 S.W.3d 260, 267 (Tex. App.BHouston [14th Dist.] 2002, pet.
denied).

Developer=s fraud claim against ALENDER@ Mortgage Capital is expressly
included in Paragraph 6.19.  Therefore, Developer has contractually waived its
right to have those claims tried to a jury.  However, Paragraph 6.19 does not
unambiguously evidence a knowing and voluntary waiver of Developer=s fraud claim against nonsignatory
CSFB.  We hold that the trial court did not abuse its discretion in
interpreting the jury waiver clause so as to exclude Developer=s fraud claim against nonsignatory
CSFB.  Accordingly, we overrule relators= first issue.

                                                       EQUITABLE
ESTOPPEL

In their
second issue, relators argue that the trial court abused its discretion by
refusing to apply direct-benefits equitable estoppel to Developer=s fraud claim against CSFB.  In the
arbitration context, the area in which direct-benefits estoppel has been most
frequently applied, a nonsignatory may be able to enforce an arbitration
provision against a contract signatory that Aseeks, through the claim, to derive a
direct benefit from the contract containing the arbitration provisions.@  In re Weekley Homes, L.P.,
180 S.W.3d 127, 131 (Tex. 2005) (orig. proceeding).  Relators= rationale is that Developer must
rely upon the existence and terms of the Loan Agreement in proving its
common-law fraud claims against CSFB; therefore, they assert that the jury
waiver clause contained in the contract signed by Developer should apply to
Developer=s fraud claim against nonsignatory CSFB.  Developer responds that its
claims arise outside of, and do not depend upon, the Agreement.








We
decline to recognize direct-benefits estoppel as a vehicle by which a jury
waiver clause may be applied to claims against a party that did not sign the
contract containing the clause.  We are unaware of any court, in Texas or
elsewhere, that has applied direct-benefits estoppel to a jury waiver
provision.[5]  We recognize
that Texas courts have occasionally referenced arbitration principles in
deciding jury-waiver issues.  See Prudential, 148 S.W.3d at 131; Wells
Fargo, 115 S.W.3d at 607.  However, these occasional references do not
signal a departure from the longstanding principle that jury waivers are
disfavored in Texas.  Nor can Prudential or Wells Fargo be read
as placing jury-waiver provisions on the same footing as arbitration clauses. 
These mechanisms cannot be treated interchangeably merely because they both
lead to decisions by factfinders other than jurors.  Jury waiver provisions and
arbitration clauses implicate significantly different policies and principles.








In
upholding parties= freedom to contract, the Texas Supreme Court noted that
arbitration agreementsBwhich are strongly favoredBallow parties to contractually opt
out of the civil justice system altogether.[6] 
Prudential, 148 S.W.3d at 131.  The use of arbitration as an example of
contractual waiver should not be read as a statement that, henceforth, jury
waivers are to be analyzed interchangeably with arbitration agreements.  See
Mikey=s Houses LLC v. Bank of America, N.A., 232 S.W.3d 145, 151 (Tex. App.BFort Worth 2007, mand. pending) (AThe standards governing the
enforceability of arbitration clauses are inapplicable to prelitigation
contractual jury waiver provisions[.]@).

Our
sister court in Fort Worth recently outlined several reasons why arbitration
agreements differ from contractual jury-waiver clauses:

$          Public policy favors
arbitration; the same cannot be said of the waiver of constitutional rights.

$          Although statutes generally
require courts to compel contractual arbitration, no comparable statutory
mandate directs courts to enforce contractual jury trial waivers.

$          Application of the
standards for enforcing arbitration clauses would conflict with the Brady
Aknowing and voluntary@ standard that the Texas Supreme
Court adopted in In re Prudential.

$          AA distinction exists between an
agreement to resolve disputes out of court and an agreement to resolve disputes
in court but to waive constitutional aspects of that in-court resolution.@

Id. at 151-52.








The
right to a trial by jury is Aone of our most precious rights,@ and holds Aa sacred place@ in our history.  General Motors
Corp. v. Gayle, 951 S.W.2d 469, 476 (Tex. 1997) (orig. proceeding). 
Restrictions placed on that right will therefore be subject to Autmost scrutiny.@  Bell Helicopter Textron, Inc. v.
Abbott, 863 S.W.2d 139, 141 (Tex. App.BTexarkana 1993, writ denied).  If
relators are correct that Developer cannot prove its fraud claims against CSFB
without at least referencing the terms of the Loan Agreement, the
application of direct-benefits estoppel here would coerce Developer into a
non-jury trial of its claims against CSFB.  We have already concluded that
Developer did not knowingly and voluntarily waive its rights to a jury trial
with respect to its claims against nonsignatory CSFB, and we will not use
equitable estoppel as a vehicle to circumvent the required Aknowing and voluntary@ waiver standard.  See Prudential,
148 S.W.3d at 132.

We
overrule relators= second issue.

                                                        AGENCY
PRINCIPLES

In their
third issue, Relators contend that CSFB may enforce the waiver clause because 
Developer has alleged an agency relationship between CSFB and Mortgage
Capital.  Developer denies that its pleadings set forth an agency relationship
between the two entities;[7] rather, it
has pled agency as between the relators and the employees who purportedly
uttered the fraudulent statements in question.

The
mandamus record does not show that this agency argument was presented to or
considered by the trial court.  Therefore, we do not consider it.  See
Tex. R. App. P. 33.1(a); Bigham v. Dempster, 901 S.W.2d 424, 426 n.3
(Tex. 1995) (orig. proceeding); In re Bath Junkie Franchise, Inc., 246
S.W.3d 356, 367 (Tex. App.BBeaumont 2008, orig. proceeding).

                                                                   STANDING








In their
fourth issue, relators assert that Mortgage Capital, as a contract signatory,
has standing to enforce the clause on behalf of CSFB.  This contention, which
rests upon relators= broad interpretation of Paragraph 6.19, largely echoes
relators= first issue.  Because we have
already concluded that the waiver clause does not apply to Developer=s fraud claims against nonsignatory
CSFB, we need not reach the issue of whether Mortgage Capital has legal
standing to enforce the clause in favor of its nonsignatory affiliate.

                                                             CONSOLIDATION

Finally,
relators insist in the alternative that B even if the claims against CSFB are
to be tried by a jury B the respondent abused her discretion in ordering that both
trials occur simultaneously.  Because the record does not indicate that
relators objected in the trial court to the consolidation, we therefore decline
to issue mandamus relief on this ground.  See Tex. R. App. P. 33.1(a). 
Even if we were to address this issue on the merits, our resolution of this
issue would remain the same.

A trial
court has the inherent power to control the resolution of cases on its docket
and is granted wide discretion to conduct trial as it sees fit.  Dow
Chemical Co. v. Francis, 46 S.W.3d 237, 240 (Tex. 2001).  Nothing about
this case suggests that the respondent abused her discretion in determining
that both trials could be held together and that different procedures could
fairly apply to both trials.  See In re C-Span Entm=t, Inc., 162 S.W.3d 422, 429 (Tex. App.BDallas 2005, orig. proceeding)
(declining mandamus relief where a jury-waiver ruling resulted in a
simultaneous bench trial and jury trial).

Relators= argument is grounded upon their
assumption that the application of direct-benefits estoppel would create a
situation in which the Loan Agreement would be admissible in the non-jury
trial against Mortgage Capital, but inadmissible in the jury trial of Developer=s claims against CSFB.  They argue
further that the inconsistent admissibility of the Loan Agreement in trials
conducted simultaneously would almost certainly invite jury confusion, citing In
re Van Waters & Rogers, Inc., 145 S.W.3d 203, 211 (Tex. 2004) (orig.
proceeding).








Although
the parties appear to equate reliance on the Loan Agreement with admissibility
of the Agreement, we do not necessarily agree that the two concepts are
automatically linked.  It is conceivable that B were direct-benefits estoppel to
apply B the Agreement could be admissible
for contextual purposes, without being necessary to the Developer=s fraud claim.  We do not purport
here to invade the trial court=s broad discretion to determine the admissibility of
evidence.  See Halim v. Ramchandani, 203 S.W.3d 482, 488 (Tex. App.BHouston [14th Dist.] 2006, no pet.). 
Even were we to indulge the parties= assumption that admissibility is
dictated by reliance, this issue was predicated on the thought that we would
apply direct-benefits estoppel to Developer=s claims.  We have declined to do so,
and therefore need not reach this issue.

Most
consolidation orders do not threaten a defendant=s substantial rights such that an
ordinary appeal becomes inadequate; therefore, mandamus typically does not lie
from a trial court=s consolidation order.  See Van Waters & Rogers,
145 S.W.3d at 211.  This case does not present such extraordinary circumstances
justifying mandamus relief.

Accordingly,
we deny the petition for writ of mandamus.

 

 

 

/s/      Adele Hedges

Chief Justice

 

 

Petition Denied and Opinion filed,
June 17, 2008.

Panel consists of Chief Justices
Hedges, Justice Boyce, and Senior Justice Hudson.*









            [1]The Honorable
Elizabeth Ray, presiding judge of the 165th Judicial District Court of Harris
County, Texas.





            [2]1001 McKinney
Ltd. v. Credit Suisse First Boston Mortgage Capital, 192 S.W.3d 20 (Tex.
App.BHouston [14th Dist.] 2005, pet. denied.





            [3]The mandamus
record filed by relators does not include a copy of the entire Loan Agreement. 
Instead, we have been given a copy of the title page to the Agreement, page 65
(which contains the jury waiver clause in paragraph 6.19), and the parties= signature page.





            [4]The AGENERAL PARTNER@
mentioned in Paragraph 6.19 refers to Developer=s General Partner (McKinney Interests, Inc.).  CSFB is not identified
anywhere on the signature page.





            [5]Relators rely on
four cases from other jurisdictions for the proposition that direct-benefits
estoppel has been extended to contractual jury waivers.  See Powers v. Lazy
Days RV Ctr., Inc., 2006 WL 1890188 (M.D. Fla. July 10, 2006); In re
DaimlerChrysler AG Sec. Litig., 2003 WL 22769051 (D. Del. Nov. 19, 2003); Leav
v. Weitzner, 51 N.Y.S.2d 775 (N.Y. App. Div. 1944); Okura & Co.
(America), Inc. v. Careau Group, 783 F. Supp. 482 (C.D. Cal. 1991).  We are
not persuaded by these authorities.

 

The Powers court had already
concluded that the plaintiff had no right to a jury trial on its claims, and
its resolution did not turn upon the application of equitable estoppel.  See
Powers, 2006 WL 1890188, at *2.  Likewise, the Delaware federal court had
already found the jury waiver enforceable on other grounds besides estoppel.  See
DaimlerChrysler, 2003 WL 22769051, at *2-3.  Moreover, the court applied
the Asubstantially interdependent and concerted misconduct@ theory of equitable estoppel, which has been rejected
by the Texas Supreme Court.  See In re Merrill Lynch Trust Co., 235
S.W.3d 185, 191 (Tex. 2007) (orig. proceeding).  In Leav, the New York
court concluded that the broadly-worded waiver provision applied to the
plaintiff=s complaints, and its apparent (although not express)
application of estoppel would be dicta.  See Leav, 51 N.Y.S.2d at
777-78.  Finally, the Central District of California neither mentioned nor
applied equitable estoppel, concluding instead that the parties had entered
into a knowing, intentional, and voluntary waiver.  See Okura & Co.,
783 F. Supp. at 489-91.





            [6]See also Wells
Fargo, 115 S.W.3d at 607 (ATexas allows
parties to contractually waive the right to a jury trial by enforcing
arbitration agreements.@).





            [7]Although the
relationship between the relators (described only as Aaffiliates@)
is unclear, CSFB is alleged to originate real estate development loans in which
Mortgage Capital acts as the funding entity.





            *Senior
Justice Hudson sitting by assignment.