**Stephen L. MOWBRAY, Plaintiff**

v.

**Rajai ZUMOT, et al., Defendants.**

**Civil No. BEL–06–1606.**

United States District Court,
D. Maryland.

March 3, 2008.

Matt P. Lavine, Law Office of Matt P. Lavine, Columbia, MD, for Plaintiff.

Richard Timothy Colaresi, Victoria M. Shearer, Karpinski, Colaresi and Karp, PA, Baltimore, MD, for Defendants.

## MEMORANDUM

BENSON EVERETT LEGG, Chief Judge.

Stephen L. Mowbray ("Mowbray") filed this action in May 2006 against Rajai Zumot ("Zumot"), Mohammed El–Rashed ("El–Rashed"), Rainbow LLC ("Rainbow") and Salt LLC ("Salt") (Collectively, "Defendants") for breach of contract and neg-

ligent misrepresentation in connection with the sale of a vacant apartment building. On January 30th, 2008, this Court denied Mowbray's motion for summary judgment, granted in part and denied in part the Defendants' motion for summary judgment, and scheduled a telephone conference call for March 3, 2008[1] to set a date for trial. In accordance with a waiver provision in the sale agreement between Mowbray, El–Rashed, Rainbow, and Salt, the Court stated that the trial would be scheduled as a non-jury trial, but gave Mowbray 10 days to file a memorandum stating his objections. Mowbray filed his memorandum-which the Court will treat as a motion for a jury trial-on February 8, 2008. The Defendants responded on February 13, 2008, and the Court is now prepared to issue its ruling. For the following reasons, the motion will be DENIED.

## I. Background

This dispute arises out of a complex transaction through which Mowbray assumed ownership of a Baltimore City apartment building known as the Brexton. The details of the transaction are painstakingly set forth in the Court's memorandum opinion of January 30th. For purposes of the instant proceedings, however, a brief summary will suffice.

In December 2002, Mowbray executed an agreement to purchase the Brexton from Park Avenue LLC. The agreement called for settlement to occur in May 2003 and required Park Avenue to make certain repairs to the Brexton's roof, windows, and gutters. These repairs were ultimately delayed, however, and the settlement was postponed twice to accommodate their completion.

When the settlement finally took place on November 10, 2003, the parties executed a series of documents restructuring the mechanics of the transaction. First, Mowbray entered into an "Agreement of Sale" with El–Rashed, Rainbow, and Salt, the collective owners of Park Avenue LLC. Whereas the December 2002 agreement would have transferred ownership of the Brexton directly from Park Avenue to Mowbray, the Agreement of Sale called for the purchase of 100% of the membership interests in Park Avenue itself. Paragraph 22(c) of the Agreement of Sale provides that "in the event of a dispute, the parties hereto waive a trial by jury." Although Zumot signed the Agreement as "Executive Officer" and "Member" of Rainbow and Salt, respectively, he was not a party to the contract in his individual capacity.

Mowbray also executed a separate agreement with Zumot (the "Guaranty Agreement"), pursuant to which Zumot personally guaranteed the representations set forth in the Agreement of Sale. Zumot's liability under the Guaranty Agreement was limited to $250,000.

Shortly after the settlement, Mowbray noticed water leaking from the Brexton's roof and windows. He also noticed that pigeons had entered the building through gaps in the roof. To remedy these deficiencies, Mowbray sought payment from Zumot pursuant to the terms of the Guaranty Agreement, but received no response.

Mowbray filed this lawsuit in the Circuit Court for Baltimore City on May 12, 2006,[2] alleging that Zumot, El–Rashed, Rainbow and Salt had breached the 2003 Agreement of Sale by failing to make the repairs set

---

**1.** The conference call was subsequently rescheduled for March 31st, 2008.

**2.** After the case was removed to this Court on June 21, 2006, Mowbray filed a timely demand for a jury trial in accordance with Rule 38 of the Federal Rules of Civil Procedure.

forth in the 2002 agreement between Mowbray and Park Avenue. Mowbray also claimed that Zumot was liable for breach of contract pursuant to the Guaranty Agreement, and that Zumot and El–Rashed were guilty of negligent misrepresentation.

Both parties moved for summary judgment[3] at the close of discovery. On January 30th, 2008, the Court granted the Defendants' motion in part by excising the breach of contract claim against Zumot as well as the negligent misrepresentation claim against El–Rashed. The Court denied summary judgment on all remaining claims and scheduled a conference call for March 3, 2008 in order to set a date for trial.

In accordance with Paragraph 22(c) of the Agreement of Sale, the Court determined that the trial of this matter would be scheduled as a non-jury trial, but gave Mowbray 10 days to file a memorandum in support of his objections. Mowbray made a timely submission on February 8, 2008, to which the Defendants responded on February 18th, 2008. With this procedural background in mind, we turn to the instant dispute.

## II. Standard of Review

 Though the right to a jury trial under the Seventh Amendment[4] is a fundamental one, it "can be knowingly and intelligently waived by contract." *Leasing Serv. Corp. v. Crane*, 804 F.2d 828, 832 (4th Cir.1986). In light of the strong federal policy favoring jury trials,[5] however,

courts have typically "indulge[d] every reasonable presumption against waiver." *Aetna Ins. Co. v. Kennedy*, 301 U.S. 389, 393, 57 S.Ct. 809, 81 L.Ed. 1177 (1937). Accordingly, the Fourth Circuit has held that a party seeking to enforce a contractual provision waiving the right to a jury trial must establish that the waiver was knowing and voluntary. *Leasing Serv. Corp.*, 804 F.2d at 833.

## III. Discussion

 In this case, Section 22(c) of the Agreement of Sale clearly and unambiguously states that "in the event of a dispute, the parties hereto waive a trial by jury." Under the standard announced by the Fourth Circuit in *Leasing Service Corp.*, the Defendants must establish that this waiver was knowing and voluntary in order for it to be enforceable. On the record before us, we conclude that the Defendants have met their burden.

As an initial matter, the waiver provision contained in the Agreement of Sale is at least as conspicuous as the one held enforceable in *Leasing Service Corp.* In that case, the Fourth Circuit was faced with a contractual waiver "situated on the reverse side of a two-page, standardized, fine print contract . . . not set off in a paragraph of its own[,] in the ninetieth line of print and [ ] in the middle of a thirty-eight line paragraph." 804 F.2d at 833. Over the appellees' objections, a unanimous panel decided to enforce the waiver, emphasizing that the contract was only two pages long and that the appellees were "manifestly

---

**3.** In the memorandum supporting their motion for summary judgment, the Defendants explicitly refer to the waiver provision contained in the Agreement of Sale. *Docket No.* 14 at 9.

**4.** The Seventh Amendment to the United States Constitution provides that "[i]n Suits at common law, where the value in controversy

shall exceed twenty dollars, the right of trial by jury shall be preserved."

**5.** In diversity as well as other actions, "[t]he right to a jury trial in the federal courts is to be determined as a matter of federal law[.]" *Simler v. Conner*, 372 U.S. 221, 222, 83 S.Ct. 609, 9 L.Ed.2d 691 (1963).

shrewd businessmen" who successfully bargained for "other amendments to the contract's original terms." *Id.*

Although the Agreement of Sale is a longer document (at least in terms of pages) than the contract in *Leasing Service Corp.*, it is far from voluminous. Unlike the *Leasing Service* contract, moreover, the Agreement of Sale contains no fine print and relatively few lengthy paragraphs. Significantly, the jury waiver provision contained in the Agreement of Sale is set off in its own paragraph, albeit under the heading "Miscellaneous Provisions." Taking these factors together, we conclude that the waiver provision contained in the Agreement of Sale is sufficiently conspicuous to merit enforcement.

Furthermore, as in *Leasing Service Corp.*, the parties to the Agreement of Sale "were not manifestly unequal in terms of bargaining positions." 804 F.2d at 833. As we noted in our opinion of January 30th, Mowbray has over 35 years of experience as a real estate broker and developer, and "there is every reason to assume that he was in a position of equal bargaining power vis-a-vis [the Defendants] in negotiating the [provisions of] the Agreement of Sale." Docket No. 27, at 9. Given the similarity between these circumstances and those before the Fourth Circuit in *Leasing Service Corp.*, the Court is bound to conclude that Mowbray knowingly and voluntarily waived his right to a jury trial.

■ Even if the waiver was knowing and voluntary, Mowbray asserts three reasons why it should it should not be enforced at this point in the proceedings. His first argument is that the Defendants defaulted their right to invoke the waiver provision by failing to bring it to the Court's attention. Pl.'s Mem. at 4. This statement is inaccurate, however, as the Defendants explicitly refer to the waiver in their summary judgment memorandum.

Docket No. 14 at 9. ("In the final section of the Agreement of Sale contract, the parties hereto waive a trial by jury.") (Internal quotation omitted). More importantly, it is well-established that a party (or the Court on its own initiative) may move to strike a jury demand at any time, even on the eve of trial. *See, e.g.,* James William Moore et al., *Moore's Federal Practice,* § 39.13[2][c] (3d ed.2007); *Tracinda Corp. v. DaimlerChrysler AG,* 502 F.3d 212, 226–27 (3rd Cir.2007). Accordingly, the Defendants remain entitled to invoke the contractual waiver.

■ Similarly, Mowbray argues that the Court lacks authority under Rule 39(a) of the Federal Rules of Civil Procedure to enforce the contractual waiver. Rule 39(a) provides that, where a party has demanded a jury trial pursuant to [FRCP] Rule 38, "the trial of all issues so demanded shall be by jury, unless ... (2) the court upon motion or on its own initiative finds that a right of trial by jury on some or all of [the] issues does not exist under the Constitution and statutes of the United States." According to Mowbray, "the issue of a contractual waiver does not involve the interpretation of a constitutional or statutory right," and therefore does not implicate the Court's authority to order a non-jury trial under Rule 39(a). Pl.'s Mem. at 4–5.

We do not read the rule so narrowly. Though the issue arises infrequently, federal courts "have cited and applied [Rule 39(a)] in decisions striking a jury demand because the right to a jury trial, having been contractually waived, no longer existed." *Bear Stearns Funding, Inc. v. Interface Group–Nevada, Inc.,* 2007 WL 3286645 (S.D.N.Y.2007); *citing Tracinda,* 502 F.3d at 226–227; *Great Earth Int'l Franchising Corp. v. Milks Dev.,* 311 F.Supp.2d 419, 437 (S.D.N.Y.2004). Applying these principles to the case before

us, we are satisfied that we may freely invoke the contractual waiver contained in the Agreement of Sale to order a non-jury trial under Rule 39(a).

Finally, Mowbray argues that Zumot is not entitled to enforce the contractual waiver because he was not party to the Agreement of Sale. Accordingly, Mowbray contends that even if he has waived his right to a jury trial on his claims against El–Rashed, Rainbow and Salt, "the claims against Zumot must go forward with a jury." Pl.'s Mem. at 1.

■ To the extent that Mowbray seeks redress pursuant to the Guaranty Agreement, however, he is bound by the waiver contained in the Agreement of Sale. In order to prevail on his guaranty claim, Mowbray must establish that El–Rashed, Rainbow, and/or Salt breached their obligations under the Agreement of Sale. Under the doctrine of equitable estoppel, however, Mowbray may not rely on the Agreement of Sale to establish liability while at the same time disclaiming the waiver provision contained in the same agreement. *See, e.g., Perry v. Scruggs,* 17 Fed.Appx 81 (4th Cir.2001). Accordingly, we hold that Mowbray is not entitled to a jury trial on his guaranty claim against Zumot.

■ Application of the waiver provision to Mowbray's negligent misrepresentation claim is somewhat more complicated. Whereas the guaranty claim is predicated on the representations set forth in the Agreement of Sale, the negligent misrepresentation claim hinges on an independent duty of care arising from Zumot's personal communications with Mowbray.

Accordingly, the doctrine of equitable estoppel cannot be employed to enforce the contractual waiver, because Mowbray is not seeking a benefit under the Agreement of Sale in asserting his claim. *See, e.g., R.J. Griffin & Co. v. Beach Club II Homeowners Ass'n, Inc. et al.,* 384 F.3d 157, 162 (4th Cir.2004) ("[E]quitable estoppel does not apply when a benefit results from the contractual relation of parties to an agreement ... and not ... from the agreement itself.") (Internal quotations and citations omitted).

Whether or not Mowbray is barred from disclaiming the waiver, however, the fact remains that Zumot signed the Agreement of Sale as an agent of Rainbow and Salt.[6] In a series of cases decided in the arbitration context, the Fourth Circuit has held that established common law principles, including those derived from agency law, "dictate that in an appropriate case a non-signatory can enforce, or be bound by, an arbitration provision within a contract executed by other parties." *Int'l Paper Co. v. Schwabedissen Maschinen & Anlagen GMBH,* 206 F.3d 411, 416 (4th Cir.2000); *Washington Square Securities, Inc. v. Aune,* 385 F.3d 432, 435 (4th Cir.2004). In a case decided last year, the Third Circuit applied this reasoning in addressing the enforceability of a contractual jury waiver, holding that when such a provision "applies to a signatory corporation, [it] also applies to nonsignatory directors and officers seeking to invoke the waiver as agents of the corporation." *Tracinda Corp. v. DaimlerChrysler AG,* 502 F.3d 212, 225 (3rd Cir.2007). We find this reasoning persuasive.[7] Accordingly, we hold

---

**6.** Zumot signed the Agreement of Sale in his capacity as "Executive Officer" and "Member" of Rainbow and Salt, respectively.

**7.** As in *Tracinda,* we deal here with a nonsignatory agent seeking to *invoke* an agreement

entered into by its corporate principal, as distinguished from an agent seeking to *avoid* its principal's knowing and voluntary waiver. "This is not a distinction without a difference." 502 F.3d at 224.(Internal quotation omitted).

that Zumot may invoke the waiver provision contained in Paragraph 22(c) as an agent of Rainbow and Salt.

In extending the agency rationale to cover a contractual jury waiver provision, we are not unaware of the "tension between the cases favoring arbitration clauses and those disfavoring jury waivers[.]" *Id.* at 223. This tension results from the fact that federal courts "indulge every reasonable presumption against jury waivers," *Aetna Ins. Co. v. Kennedy,* 301 U.S. 389, 393, 57 S.Ct. 809, 81 L.Ed. 1177 (1937), but resolve "all doubts concerning the scope of arbitral issues ... in favor of arbitration." *Moses H. Cone Memorial Hospital v. Mercury Construction Corp.,* 460 U.S. 1, 24–25, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983). At first blush, these divergent presumptions appear to preclude reliance on arbitration clause cases in determining the scope of a "pure" contractual jury waiver. As the Third Circuit explained in *Tracinda,* however, it is not improper to rely on the arbitration clause cases where "traditional agency principles of who is bound by an agreement-and not the [Federal Arbitration Act's] favoring of arbitration over a jury trial-[ ] determined who was bound by the agreement to arbitrate." 502 F.3d at 223. In allowing Zumot to enforce the contractual jury waiver as an agent of Rainbow and Salt, we rely on established common law principles, and not on an improper presumption in favor of arbitration. Accordingly, we are satisfied that the agency rationale espoused by the Third Circuit in *Tracinda* is readily applicable to the controversy at bar.

To sum up, we hold that Mowbray knowingly and voluntarily waived his right to a jury trial in accordance with Paragraph 22(c) of the Agreement of Sale. Even though Zumot was not a party to the Agreement of Sale, he is entitled to enforce the waiver under settled principles of estoppel and agency law. Accordingly, Mowbray is not entitled to a jury trial on any of his remaining claims.

## V. Conclusion

For the foregoing reasons, Mowbray's motion for a jury trial is hereby DENIED. A separate order follows.

It is so ORDERED.

### ORDER

For the reasons stated in the memorandum of even date, the Court hereby:

(i) DENIES Mowbray's Motion for a Jury Trial (Docket No. 30).

It is so ORDERED.