## In re CREDIT SUISSE FIRST BOSTON MORTGAGE CAPITAL, L.L.C. and Credit Suisse First Boston, L.L.C., Relators.

### No. 14–08–00819–CV.

Court of Appeals of Texas, Houston (14th Dist.).

Dec. 11, 2008.

Rehearing Overruled Feb. 3, 2009.

*Corp.,* 52 A.D.3d 710, 862 N.Y.S.2d 56 (N.Y.App.Div. June 17, 2008).

Reagan W. Simpson, H. Victor Thomas, Reginald Ross Smith, Penn Christopher Huston, Houston, TX, for appellants.

David M. Gunn, David J. Beck, Constance H. Pfeiffer, Houston, TX, for appellees.

Panel consists of Chief Justice HEDGES, Justice BOYCE, and Senior Justice HUDSON.[*]

## OPINION

ADELE HEDGES, Chief Justice.

On June 17, 2008, we declined to issue mandamus relief compelling the respondent [1] to extend a contractual jury waiver to a nonsignatory. Relators now urge us to extend the jury waiver to the nonsignatory on the basis of agency principles, an argument not before us in the earlier mandamus proceeding. We hold that a valid contractual jury waiver may be invoked by the agents of a signatory party. However, we decline to extend a jury waiver to a nonsignatory that is merely *alleged* to be the signatory's agent. Therefore, we deny the petition for writ of mandamus.

---

[*] Senior Justice J. Harvey Hudson sitting by assignment.

1. Respondent is the Honorable Elizabeth Ray, presiding judge of the 165th Judicial District Court of Harris County.

## BACKGROUND

Relators consist of Credit Suisse First Boston Mortgage Capital, L.L.C. ("Mortgage Capital") and Credit Suisse First Boston, L.L.C. ("CSFB"). Both relators have been sued for fraud by the real party in interest, 1001 McKinney Ltd. (the "Developer"), a real-estate development partnership that planned to renovate a Houston office building. Developer and Mortgage Capital, but not CSFB, signed a Loan Agreement in which Developer was to receive a loan in excess of $39 million to fund the renovation. After the Loan Agreement was signed, however, a redesign of the renovation project forced Developer to seek additional financing. Allegedly, two CSFB employees fraudulently promised Developer that Mortgage Capital would lend an additional $6.75 million on the same terms as the original loan. Developer alleges that the CSFB employees were authorized to act on behalf of Mortgage Capital, and further claims that CSFB's promise "effectively committed" Mortgage Capital to the new loan. After relators declined to loan additional money, Developer sued CSFB and Mortgage Capital for common-law fraud.[2]

Relators moved to quash Developer's jury demand, citing a clause in the Loan Agreement in which the parties to the contract waived their right to submit disputes to a jury. Developer responded that, although Mortgage Capital signed the Loan Agreement, CSFB did not; therefore, Developer contended, its claims against CSFB are not subject to the jury-waiver clause. The trial court agreed with Developer and quashed the jury demand as to contract-signatory Mortgage Capital, but not as to nonsignatory CSFB. The court ruled that a single trial will take place, in which Developer's fraud claims against CSFB may be tried to a jury, but its claims against Mortgage Capital will be submitted to the bench. We denied relators' subsequent mandamus petition. *See In re Credit Suisse First Boston Mortgage Capital*, 257 S.W.3d 486 (Tex.App.-Houston [14th Dist.] 2008, orig. proceeding). However, we declined to consider one of relators' arguments which was premised on the application of agency principles, because relators had not raised that contention in the trial court. *See id.* at 493.

Relators then presented their agency argument to the trial court in a motion for reconsideration, which was denied. This second mandamus proceeding followed. Relators contend that, because Developer has alleged an agency relationship between CSFB and Mortgage Capital, the trial court abused its discretion by refusing to enforce the jury waiver as to Developer's fraud claims against CSFB.

## STANDARD OF REVIEW

██ Mandamus relief is available when the relator establishes a clear abuse of discretion for which there is no adequate appellate remedy. *See In re Prudential Ins. Co. of Am.,* 148 S.W.3d 124, 135 (Tex.2004) (orig. proceeding). A trial court clearly abuses its discretion if it reaches a decision so arbitrary and unreasonable as to constitute a clear and prejudicial error of law. *Walker v. Packer,* 827 S.W.2d 833, 839 (Tex.1992) (orig. proceeding). With respect to the resolution of fact issues, we will not substitute our judgment for the trial court's. *See id.* Therefore, the relator must establish the trial court

---

**2.** Developer also sued relators for statutory fraud, civil conspiracy, negligent misrepresentation, breach of contract, and promissory estoppel. However, its common-law fraud claim was the only legal theory that survived summary judgment and the subsequent appeal. *See 1001 McKinney Ltd. v. Credit Suisse First Boston Mortgage Capital,* 192 S.W.3d 20, 24, 30 (Tex.App.-Houston [14th Dist.] 2005, pet. denied).

reasonably could have reached only one decision. *See id.* at 840. On the other hand, a trial court has no discretion in determining what the law is or applying the law to the facts; therefore, a clear failure by the trial court to analyze or apply the law correctly constitutes an abuse of discretion, even in an unsettled area of law. *See id.; Huie v. DeShazo,* 922 S.W.2d 920, 927–28 (Tex.1996) (orig. proceeding). Whether a party has contractually waived its right to a jury trial is a question of law that we review *de novo. See Prudential Ins. Co.,* 148 S.W.3d at 135; *In re Wells Fargo Bank Minn. N.A.,* 115 S.W.3d 600, 605 (Tex.App.-Houston [14th Dist.] 2003, orig. proceeding [mand. denied]).

## EXTENSION THROUGH AGENCY PRINCIPLES

█ We are asked to decide, as a matter of first impression, whether a valid contractual jury waiver applies to nonsignatories seeking to invoke the waiver as agents of the signatory corporation. We conclude that a valid waiver provision may be invoked by a nonsignatory agent when it acts on behalf of the signatory corporation.

In 2007, the Texas Supreme Court adopted a similar rule in the context of arbitration provisions. *In re Kaplan Higher Educ. Corp.,* 235 S.W.3d 206, 209 (Tex.2007) (orig. proceeding). *Kaplan* involved a fraudulent-inducement lawsuit brought by forty-five students against a college, its corporate parent, its president, and its admissions director. *See id.* at 208. The students' enrollment agreement, which was signed by the students, the college, and the president, required the arbitration of any disputes arising therefrom. *See id.* However, the corporate parent and the admissions director were not signatories to the agreement. *See id.* After the defendants pressed for arbitration, the students—hoping to avoid arbitration—dismissed their claims against the two signatories, leaving only their claims against the two nonsignatories. *See id.* Nevertheless, the Supreme Court permitted the two nonsignatories to invoke the arbitration agreement, as agents of the signatories. *See id.* at 209. The court reasoned that most contract claims against a corporation could be recast as fraudulent-inducement or tortious-interference claims against the agents or employees who took part in negotiating the contract. *See id.* However, it would be impractical to require all of the corporation's agents to sign, or be listed in, every contract executed by the corporation. *See id.* To prevent parties (*e.g.,* the students) from avoiding unfavorable clauses (*e.g.,* mandatory arbitration) by suing only the other party's agents, the Supreme Court held that "the agents of a signatory may sometimes invoke an arbitration clause even if they themselves are nonsignatories and a claimant is not suing on the contract." *Id.* However, the rule applies only to agents acting on behalf of the signatory corporation:

> We emphasize again today that arbitration clauses do not automatically cover all corporate agents or affiliates. Like other contracts, arbitration agreements "are enforced according to their terms and according to the intentions of the parties." Thus, for example, owners may not be able to invoke a subsidiary's arbitration clause when they act on their own behalf rather than for their subsidiary. But when an agreement between two parties clearly provides for the substance of a dispute to be arbitrated, one cannot avoid it by simply pleading that a nonsignatory agent or affiliate was pulling the strings.

*Id.* at 210 (citations omitted).

█ Relators urge us to analogize jury waiver provisions to arbitration claus-

es, thereby extending the *Kaplan* holding to the case before us. That a rule may be applied in arbitration clauses, however, does not necessarily render it appropriate for jury waivers. *See Credit Suisse,* 257 S.W.3d at 491–92. Arbitration agreements and jury waivers are subject to opposite presumptions:

> Unlike arbitration agreements, which are strongly favored under Texas law, the right to a jury trial is so strongly favored that contractual jury waivers are strictly construed and will not be lightly inferred or extended. Before a jury waiver will be enforced, such waiver must be found to be a voluntary, knowing, and intelligent act that was done with sufficient awareness of the relevant circumstances and likely consequences.

*Id.* at 490 (citations omitted). A handful of federal courts have extended a jury waiver to a nonsignatory through agency principles, but they based their reasoning on principles unrelated to relators' proposed analogy between arbitration clauses and jury waivers. *See Tracinda Corp. v. DaimlerChrysler AG,* 502 F.3d 212, 224–25 (3d Cir.2007); *Mowbray v. Zumot,* 536 F.Supp.2d 617, 623 (D.Md.2008). Those courts explained that, because a corporation can act only through its agents and employees, by definition, one who agrees to a jury-waiver clause knows—and intends—that the clause naturally must extend to the corporation's nonsignatory agents, too. *See Tracinda,* 502 F.3d at 223–25; *see also In re Merrill Lynch Trust Co. FSB,* 235 S.W.3d 185, 189 (Tex. 2007) (orig. proceeding) ("[C]ontracting parties [that] agree to arbitrate all disputes 'under or with respect to' a contract . . . generally intend to include disputes about their agents' actions because '[a]s a general rule, the actions of a corporate agent on behalf of the corporation are deemed the corporation's acts.' "). Thus, extension-through-agency does not run afoul of the requirement that jury waivers

be knowingly and voluntarily made. *See Brady v. United States,* 397 U.S. 742, 748, 90 S.Ct. 1463, 25 L.Ed.2d 747 (1970), *quoted in Prudential Ins. Co.,* 148 S.W.3d at 132.

Accordingly, we hold that, when a valid contractual jury waiver applies to a signatory corporation, the waiver also extends to nonsignatories that seek to invoke the waiver as agents of the corporation. *See Tracinda,* 502 F.3d at 225; *Kaplan,* 235 S.W.3d at 209.

## ALLEGATIONS OF AGENCY

Despite Developer's prodding, relators have not elucidated the legal relationship between CSFB and Mortgage Capital, which relators describe simply as "affiliates." *See Credit Suisse,* 257 S.W.3d at 493 n. 7. Despite the absence of a stipulation or proof establishing an agency relationship, relators contend CSFB may invoke the jury waiver simply because Developer *alleges* that CSFB acted as the agent of signatory Mortgage Capital. Developer responds that it has not alleged an agency relationship between CSFB and Mortgage Capital.

■ In deciding whether Developer has alleged an agency relationship between CSFB and Mortgage Capital, we subject its pleadings to a *de novo* review. *See, e.g., In re C.S.,* 264 S.W.3d 864, 873 n. 6 (Tex.App.-Waco 2008, no pet.) (employing *de novo* review to decide whether pleadings state cognizable cause of action); *Boales v. Brighton Builders, Inc.,* 29 S.W.3d 159, 163 (Tex.App.-Houston [14th Dist.] 2000, pet. denied) (reviewing pleadings *de novo* to address dismissal upon special exceptions); *see also Turner v. Zellers,* 232 S.W.3d 414, 418 (Tex.App.-Dallas 2007, no pet.) ("[T]he trial court is in no better position than the appellate court to determine the application of the law to the . . . pleadings.").

Developer's allegations, which we summarize below, are contained in its Fourth Amended Original Petition and its disclosure responses. *See* Tex.R. Civ. P. 194.2(c) (requiring a party to state its legal theories and the general factual basis for its contentions). Developer has alleged that CSFB originated commercial mortgage loans and used Mortgage Capital as the funding entity for those loans. Accordingly, the negotiations for the building renovation loan were handled by CSFB, through its authorized employees. In negotiating the terms of the loan to be funded by Mortgage Capital, these CSFB employees were "authorized to act on behalf of" Mortgage Capital. Following the building redesign, Developer negotiated with CSFB's employees regarding additional financing on the same terms as the original loan, and the "agreement of CSFB LLC to make the promised new loan effectively committed CSFB Mortgage Capital to make the promised loan[.]"

■ We conclude that Developer has asserted an agency relationship between CSFB and Mortgage Capital. An "agent" is one who is authorized to transact business, or manage some affair, for the principal entity. *See Coleman v. Klockner & Co. AG,* 180 S.W.3d 577, 588 (Tex.App.-Houston [14th Dist.] 2005, no pet.). Developer has alleged that CSFB, by and through its employees, was authorized to negotiate the terms under which the signatory, Mortgage Capital, was to loan money.

■ Developer contends that its pleadings do not set forth an agency relationship between CSFB and Mortgage Capital but, rather, between these corporate entities and the two CSFB employees charged with negotiating the financing deals. However, we see no appreciable distinction between these two scenarios. Developer admits that its fraud claims against both relators stem from the same factual allegations: "The agents in this case are the two employees who uttered the fraudulent statements, and they acted on behalf of corporations that are held vicariously liable for their torts." It is well-settled that corporations can act only through its agents and employees. *See GTE Sw., Inc. v. Bruce,* 998 S.W.2d 605, 618 (Tex.1999); *Hammerly Oaks, Inc. v. Edwards,* 958 S.W.2d 387, 391 (Tex.1997). Thus, the actions taken by certain agents of a corporation sometimes may be deemed to be the acts of the corporation itself. *See GTE Sw., Inc.,* 998 S.W.2d at 618; *First United Bank v. Panhandle Packing & Gasket, Inc.,* 190 S.W.3d 10, 15 (Tex.App.-Amarillo 2005, no pet.) ("[W]hat a principal does through an agent, he does himself."). In addition, many business-related torts may be brought against either the corporation or its employees. *See Merrill Lynch,* 235 S.W.3d at 188. Not surprisingly, then, the law is replete with examples of corporations that act as agents for others. *See id.* at 194 n. 40 (citing nonsignatory business entities acting as agents for signatory corporations); *see also Tractebel Energy Mktg., Inc. v. E.I. Du Pont de Nemours & Co.,* 118 S.W.3d 60, 72 (Tex.App.-Houston [14th Dist.] 2003, pet. denied) ("[C]learly, a parent corporation could agree to serve for some purposes as an agent of one of its lowly subsidiaries."). Many cases recognize that, in acting as another's agent, the corporation must of necessity have acted through individual employees, as CSFB is alleged to have done here. *See, e.g., Merrill Lynch,* 235 S.W.3d at 188–89. If the corporation truly acts as another's agent, however, the mere recasting of its acts as those of its employees does not change the corporation's status as agent. Therefore, we hold a plaintiff may not avoid a valid jury waiver simply by suing the nonsignatory corporation vicariously for the acts of its agent employee, if the employee as agent could invoke the waiver clause as an

agent of the contract signatory. *See Merrill Lynch*, 235 S.W.3d at 188–89 ("If a plaintiff's choice between suing the corporation or suing the employees determines whether an arbitration agreement is binding, then such agreements have been rendered illusory on one side.").

In any event, Developer asserted a *direct* theory of agency between the two corporations themselves: "The agreement of CSFB LLC to make the promised loan effectively committed CSFB Mortgage Capital to make the promised loan, if necessary." This allegation presupposes CSFB's actual or apparent authority, *as an agent*, to bind the alleged principal, Mortgage Capital. *See Ames v. Great S. Bank*, 672 S.W.2d 447, 450 (Tex.1984); *Grace Cmty. Church v. Gonzales*, 853 S.W.2d 678, 680 (Tex.App.-Houston [14th Dist.] 1993, no writ).

■ We conclude that Developer has alleged that CSFB, the nonsignatory corporation, acted as the agent of the signatory, Mortgage Capital.[3]

**ALLEGATIONS ARE NOT ENOUGH**

■ However, we further hold that a nonsignatory may not invoke a jury waiver merely because it is *alleged* to be an agent of the signatory. We have found no controlling authority for relators' proposition that a nonsignatory may invoke a contractual jury waiver under such circumstances. Neither *Kaplan* nor *Pritzker v. Merrill Lynch, Pierce, Fenner and Smith, Inc.*, 7 F.3d 1110 (3d Cir.1993), provides

clear support for relators' contention. In *Kaplan*, the Texas Supreme Court parenthetically discussed the plaintiff's pleadings but also noted that the "undisputed facts" demonstrated an agency relationship. *See Kaplan*, 235 S.W.3d at 210. Thus, *Kaplan* cannot be read as holding that allegations alone warrant extension of a jury-waiver clause to contract nonsignatories. *See id.* In *Pritzker*, the plaintiff's allegations were not the sole basis for the court's holding in that some sort of corporate agency was demonstrated by evidence in the record. *See Pritzker*, 7 F.3d at 1122. Thus, neither *Kaplan* nor *Pritzker* presents with a fact pattern like that involved in this case, in which a plaintiff's agency allegations are unaccompanied by any supporting evidence.[4]

Federal courts extending arbitration provisions to nonsignatories have relied on evidence demonstrating an agency relationship with the contract signatory. *See, e.g., Astra Oil Co. v. Rover Navigation, Ltd.*, 344 F.3d 276, 280 (2d Cir.2003); *Smith/Enron Cogeneration Ltd. P'ship, Inc. v. Smith Cogeneration Int'l, Inc.*, 198 F.3d 88, 97 (2d Cir.1999), *cert. denied*, 531 U.S. 815, 121 S.Ct. 51, 148 L.Ed.2d 20 (2000). At least one of those courts has tackled a similar, but not identical, scenario in which a nonsignatory attempted to invoke an arbitration clause solely on the basis of the plaintiff's alter-ego allegations. *See McCarthy v. Azure*, 22 F.3d 351 (1st Cir.1994). The court rejected the argu-

---

3. Developer further argues that it has not sufficiently alleged an agency relationship because it has not averred Mortgage Capital's right to control CSFB's actions. However, a petition can be sufficient if a claim reasonably may be inferred from what is specifically stated. *See Bank One, Tex., N.A. v. Stewart*, 967 S.W.2d 419, 430 (Tex.App.-Houston [14th Dist.] 1998, pet. denied). Thus, a petition is not necessarily defective even if the plaintiff has not specifically alleged one of the ele-

ments of a claim. *See SmithKline Beecham Corp. v. Doe*, 903 S.W.2d 347, 354 (Tex.1995).

4. *Tracinda* is not helpful on this point, either. Therein the district court made a factual finding that the nonsignatory acted as the signatory's agent, and Tracinda did not challenge that finding on appeal. *See Tracinda*, 502 F.3d at 222. We have no such factual finding by the trial court.

ment and offered the following observation:

> We note that, although plaintiff has alleged that appellant is the alter ego of [the signatory], *appellant has never admitted the truth of the allegation.* While not necessary to our decision, we are impelled to remark the obvious: it would be strange if an equitable doctrine could be construed to allow a party, on one hand, to resist the characterization that he is a corporation's alter ego, and, on the second hand, to allow him simultaneously to use that characterization as a device to sidetrack the characterizer's suit.

*Id.* at 363 n. 17 (emphasis added). Similarly, we conclude that one who does not admit to being the signatory's agent, like CSFB, may not claim the trappings accompanying that designation, particularly when another's constitutional right to a jury trial is intertwined.

Before a contractual jury waiver will be enforced, it must be shown to have been a voluntary and knowing act "done with sufficient awareness of the relevant circumstances and likely consequences." *Brady,* 397 U.S. at 748, 90 S.Ct. 1463, *quoted in Prudential Ins. Co.,* 148 S.W.3d at 132. Where agency is undisputed, we may infer the parties' intent that their jury waiver include the acts of their agents and employees. *See Merrill Lynch,* 235 S.W.3d at 189; *Tracinda,* 502 F.3d at 224, 225. However, a plaintiff's mere allegations of agency, by themselves, do not raise such an inference.

Because Texas law does not presume that an agency relationship exists, the party alleging agency has the burden to prove it. *See IRA Res., Inc. v. Griego,* 221 S.W.3d 592, 597 (Tex.2007). An enforceable contract requires a "meeting of the minds" between both parties. *Advantage Physical Therapy, Inc. v. Cruse,* 165 S.W.3d 21, 24 (Tex.App.-Hous-

ton [14th Dist.] 2005, no pet.). Absent proof of CSFB's agency relationship with Mortgage Capital, we cannot assume that the parties intended to include CSFB in their contractual jury waiver.

Therefore, we hold that the trial court did not abuse its discretion by declining to extend the jury waiver on the basis of allegations alone. Because the right to a jury trial implicates constitutional guarantees, we will not lightly infer or extend a contractual jury waiver absent proof that the parties intended it to include claims against nonsignatories. *See Credit Suisse,* 257 S.W.3d at 490.

## CONCLUSION

Accordingly, we deny the petition for writ of mandamus.