PER CURIAM.
Elizabeth Roper Carter, John Randolph Roper, and the Estate of Frances Elizabeth Parham Roper (“the estate”), the plaintiffs in an action pending in the Madison Circuit Court (hereinafter referred to collectively as “the plaintiffs”), petition this Court for a writ of mandamus directing the circuit court to vacate an order striking their demand for a jury trial. We deny the petition in part, grant it in part, and issue the writ.

Fachial Background and Procedural History

The plaintiffs allege the following facts. Frances Elizabeth Parham Roper died on September 21, 2007. Elizabeth Roper Carter and John Randolph Roper are her niece and nephew and primary heirs. Oii the date of her death, the estate held 765,092 shares of Colonial Bank stock valued at $23.01 per share or approximately $17,604,767. After Roper died, the value of the Colonial Bank stock began to decline. On June 13, 2008, the plaintiffs, in order to pay the estate’s tax liability, executed a promissory note with Colonial Bank in the amount of $6,000,000.
The plaintiffs allege that before executing the promissory note they expressed concerns to various Colonial Bank employees regarding the financial security of the bank. According to the plaintiffs, those employees assured them that the bank stock was going to increase in value; that the bank was financially sound; that, even *234 if the bank’s stock reached a value of zero, the bank would remain solvent; and that financially Colonial Bank was in a better position than other banks. The plaintiffs stated that, based on those representations, they executed the promissory note and related documents, including an “Unconditional Guaranty of Specific Debts” (hereinafter “the guaranty”), a “Real Estate Mortgage and Security Agreement” (hereinafter “the mortgage agreement”), and a “Term Loan Agreement” (hereinafter “the loan agreement”).
All four documents (collectively, “the loan documents”) contain provisions whereby the parties executing the documents waived their rights to a jury trial should a dispute arise between them. The jury-waiver provisions in each of the loan documents are similar but designate the parties differently. The promissory note provides: “Maker hereby waives the right to any jury trial in any action, proceeding, or counterclaim brought by either Note Holder or Maker against the other.” The promissory note defines “Maker” as Carter in her capacity as personal representative of the estate. The promissory note defines “Note Holder” as Colonial Bank and its successors and assigns.
The guaranty provides: “Bank and Guarantors hereby waive the right to any jury trial in any action, proceeding or counterclaim brought by either Bank or Borrower against the other.” The guaranty defines “Bank” as Colonial Bank and defines “Guarantor” as Carter. However, the guaranty does not define the term “Borrower.” The guaranty separately provides that Carter, as guarantor, agrees “to indemnify Bank and its officers, directors, agents and attorneys” against certain claims.
The mortgage agreement provides: “All parties to this Mortgage hereby waive the right to any jury trial in any action, proceeding or counterclaim brought by any party against any other party.” Carter, individually and on behalf of the estate, and John Randolph Roper executed the mortgage agreement, granting Colonial Bank and its successors and assigns a security interest in certain real property.
The loan agreement provides: “Bank, Borrower, Accommodation Party and each Guarantor hereby waive the right to any jury trial in any action, proceeding or counterclaim brought by either Bank, Borrower, Accommodation Party or Guarantors against the other.” The loan agreement defined “Borrower” as Carter in her capacity as personal representative of the estate; “Bank” as Colonial Bank; “Guarantors” as Carter and John Randolph Roper; and “Accommodation Party” as the “Frances Roper Corporation.” The loan agreement also provides: “This agreement shall bind and inure to the benefit of Borrower and Bank, and their respective successors and assigns.” In the section immediately preceding the jury-waiver provision, the loan agreement states: “Borrower shall indemnify and hold Bank and its directors, officers, agents, employees and attorneys (collectively, the ‘Lender Parties’) harmless of and from all liability, loss, expense or damage of any kind or nature.... ”
By October 2008, the price of Colonial Bank stock had fallen to $3.25 a share. The plaintiffs allege that certain of Colonial Bank’s employees continued to assure them that the bank was financially secure. On August 11, 2009, the value of Colonial Bank stock had fallen to $.50 a share. On August 14, 2009, the Alabama State Banking Department closed Colonial Bank and appointed the Federal Deposit Insurance Corporation (“the FDIC”) as its receiver. The FDIC subsequently assigned all promissory notes and mortgages held by Colonial Bank to Branch Banking and *235 Trust Company (“BB & T”). The plaintiffs ultimately sold the estate’s stock in Colonial Bank for approximately $.08 a share.
The plaintiffs sued Colonial Bank; BB & T; Colonial Bank’s former chief executive officer (“CEO”), Robert E. Lowder; and Colonial Bank’s former employees Colleen Misfeldt, Susan Compton, Kim Russell, Phyllis Byers, John McMullen, and Paula Renfroe. The plaintiffs alleged several causes of action, including fraudulent misrepresentation, deceit, suppression, conversion, breach of fiduciary duty, unjust enrichment, negligence, wantonness, and breach of contract. The plaintiffs alleged that the defendants had misrepresented Colonial Bank’s future prospects, causing them to execute the loan documents and, ultimately, to retain the Colonial Bank stock held by the estate through Colonial Bank’s financial demise. The defendants moved to strike the plaintiffs’ jury demand, citing the above-quoted jury-waiver provisions. On April 30, 2010, after a hearing, the trial court entered an order concluding that the waiver provisions were “sufficiently broad to apply to all defendants and all claims asserted by the plaintiffs” and granting the defendants’ motion to strike the jury demand.[1] The plaintiffs subsequently petitioned this Court for a writ of mandamus directing the trial court to vacate its April, 30, 2010, order striking their jury demand.

Standard of Review

“A writ of mandamus will be ‘issued only when there is: 1) a clear legal right in the petitioner to the order sought; 2) an imperative duty upon the respondent to perform, accompanied by a refusal to do so; 3) the lack of another adequate remedy; and 4) properly invoked jurisdiction of the court.’ Ex parte United Serv. Stations, Inc., 628 So.2d 501, 503 (Ala.1993).”
Ex parte Horton Homes, Inc., 774 So.2d 536, 539 (Ala.2000). This Court has stated: “A petition for a writ of mandamus is the appropriate vehicle for seeking review by this Court of a denial of a demand for a jury trial.” Ex parte Atlantis Dev. Co., 897 So.2d 1022, 1024 (Ala.2004). In Atlantis Development, this Court explained: “Because mandamus is an extraordinary remedy, the standard of review on a petition for a writ of mandamus is whether there is a clear showing of error on the part of the trial court.” Id.

Analysis

I. Colonial Bank and BB & T
The plaintiffs explicitly concede in their submissions to this Court that the jury-waiver provisions in the loan documents are fully enforceable as to Colonial Bank and BB & T. In their mandamus petition, the plaintiffs state that the issue presented is whether the trial court erred “in striking the plaintiffs’ jury demand with respect to claims asserted against defendants who were not parties to the agreements containing the jury waiver provision.” (Petition, at 5.) The plaintiffs then acknowledge that the waivers would be fully effective as between them and Colonial Bank, stating: “A plain reading of the waivers reveals that they are limited to claims between the plaintiffs and Defendant Colonial Bank....” (Petition, at 6.) They then state in a footnote: “Colonial Bank did not move to strike the jury demand. Thus, whether the trial court should strike the jury demand as to Colonial Bank was not a question before the trial court and is not a question now before this Court.” (Petition, at 6 n. 2.) Howev *236 er, the trial court’s April 30, 2010, order seemingly struck the plaintiffs’ jury demand as to all defendants.
In their reply brief, the plaintiffs appear to recognize the broad reach of the April 30, 2010, order and assert that the trial court erred “by striking the plaintiffs’ jury demand as to all of the defendants” and that “the jury demand should not have been stricken as to all defendants in this case.” (Reply brief, at 2, 5.) Having already conceded in their mandamus petition that the jury waiver was textually applicable to Colonial Bank, the plaintiffs went further in their reply brief, stating: “The petitioners concede, subject to the fraudulent inducement argument in Section II infra, that as assignee, BB & T may enforce the jury waiver provisions contained in the contracts that have been assigned BB & T following the collapse of Colonial Bank.” (Reply brief, at 7 n. 1.) Thus, subject only “to the [plaintiffs’] fraudulent inducement argument,” the plaintiffs fully acknowledge and concede the propriety of the striking of their jury demand with respect to their claims against Colonial Bank and BB & T. “Such an explicit admission in a brief is binding on the party making it.” Ford v. Carylon Corp., 937 So.2d 491, 502 (Ala.2006).
As to the plaintiffs’ “fraudulent inducement argument,” they contend in their mandamus petition that “the jury waivers are void, even as they relate to Colonial Bank, because the plaintiffs were induced to execute the [loan documents] by fraud.” (Petition, at 25.) The plaintiffs expand that statement in their reply brief after conceding that BB & T may enforce the jury-waiver provisions to the same extent as Colonial Bank, asserting that those provisions “are void and unenforceable, even as they relate to Defendants Colonial Bank and BB & T,” based on fraud in the inducement. (Reply brief, at 11.) The argument the plaintiffs present in their mandamus petition regarding fraudulent inducement consists of only 16 lines of text and appears to proceed on the theory that the plaintiffs would have the right to rescind the loan documents because they allegedly were fraudulently induced to enter into them. (Petition, at 25.) Before the trial court, in their response to the defendants’ motion to strike the jury demand, the plaintiffs framed the argument as follows: “The Plaintiffs allege that they were fraudulently induced to enter into all the relevant agreements and that they are entitled to rescission of those agreements. Accordingly, the jury waivers contained within those agreements cannot be entered [into evidence] by Colonial Bank to defeat the plaintiffs’ constitutional right to a trial by jury.” (Emphasis added.) The plaintiffs attach to their mandamus petition their second amended complaint as the version of the complaint on which they rely. The second amended complaint contains nine counts, eight of which seek only money damages and the last of which seeks injunctive relief; none of the claims request as relief any form of rescission of any of the loan documents. Consequently, with respect to the plaintiffs’ fraudulent-inducement argument as specifically articulated by them in the trial court, the plaintiffs have not shown that they have a clear legal right to have set aside the trial court’s order striking the jury demand as to Colonial Bank and BB & T.
II. The Individual Defendants
As to the remaining individual defendants, Colonial Bank’s former employees (hereinafter referred to collectively as “the individual defendants”), the plaintiffs contend that the waiver provisions are not broad enough to apply to them. The plaintiffs argue that, although jury-waiver provisions are enforceable, Ex *237 parte AIG Baker Orange Beach Wharf, L.L.C., 49 So.3d 1198, 1200-01 (Ala.2010),[2] they must be strictly construed. They reason that, under a strict construction, the waiver provisions in the loan documents extend only to the plaintiffs’ claims against those parties identified by the waiver provisions. Because the waiver provisions, as defined in the loan documents, referenced only Colonial Bank and not its employees, the plaintiffs contend that the waiver provisions are not broad enough to encompass their claims against the individual defendants. We agree.
Alabama Const. 1901, Art. I, § 11, provides: “[T]he right of trial by jury shall remain inviolate.” Similarly, Rule 38(a), Ala. R. Civ. P., provides: “The right of trial by jury as declared by the Constitution of Alabama or as given by a statute of this State shall be preserved to the parties inviolate.” In Ex parte Cupps, 782 So.2d 772 (Ala.2000), in determining whether a defendant’s tort-based counterclaims “arose under” a contract within the meaning of a jury-waiver provision, this Court stated: “In cases, such as this case, that involve contractual waivers, we give the text of the waiver a narrow and strict construction, in deference to the constitutional guarantee of the right to a jury trial.” 782 So.2d at 775.
Although the jury-waiver provisions state that the plaintiffs waived the right to a jury trial in “any action,” the waiver provisions limit such actions to those brought by either the plaintiffs or Colonial Bank “against the other.” The jury-waiver provisions, therefore, do not operate to waive jury trials in any action involving only one of the parties; instead,' the waiver provisions apply only to actions by one of the parties against the other. Additionally! by their plain language; the jury-waiver provisions apply only to explicitly defined parties; Colonial Bank’s former employees are not expressly among them.
Other provisions of the loan documents evidence an intent by Colonial Bank to expressly state certain rights relative to its employees and agents, and the inclusion of those provisions demonstrates Colonial Bank’s awareness of its ability to do so. First, the loan agreement, in the section immediately preceding the jury-waiver provision, expressly provides indemnification rights for Colonial Bank’s employees and agents, stating: “Borrower shall indemnify and hold Bank and its directors, officers, agents, employees and attorneys (collectively, the ‘Lender Parties’) harmless of and from all liability, loss, expense or damage of any kind or nature....” (Emphasis added.) Colonial Bank, as the drafter of the loan agreement, could have easily named the “Lender Parties,” which it had previously defined, or, separately, its employees or agents, as parties to the subsequent jury-waiver provision. Its choice not to do so evidences an intent not to bind its employees or agents to the jury-waiver provision.
Similarly, the guaranty states that Carter, as guarantor, agrees “to indemnify Bank and its officers, directors, agents and attorneys ” against certain claims. (Emphasis added.) Again, having done so in the indemnification provision, Colonial Bank could have easily included similar language in the jury-waiver provision in the guaranty. Its choice not to do so *238 evidences an intent not to bind its employees or agents to the jury-waiver provision.
Considering Colonial Bank’s express inclusion of its agents and employees with respect to indemnity rights and considering the express language of the jury-waiver provisions limiting those provisions to actions brought by specifically defined parties against each other, we cannot say that the jury-waiver provisions in the loan documents are broad enough to apply to claims by or against Colonial Bank’s former employees.
Certainly, this Court has stated that a “corporation is a legal entity, an artificial person, and can only act through agents,” Townsend Ford, Inc. v. Auto-Owners Ins. Co., 656 So.2d 360, 363 (Ala.1995), and that agents “stand in the shoes” of their principals and can enforce certain contractual agreements, Stevens v. Phillips, 852 So.2d 123, 129-30 (Ala.2002) (a defendant nonsig-natory agent had standing to enforce an arbitration agreement between its principal and the plaintiff). Other courts, applying these principles, have held that jury-waiver provisions extend to nonsignatory agents of a corporation. For example, in In re Credit Suisse First Boston Mortgage Capital, L.L.C., 273 S.W.3d 843, 847-48 (Tex.App.2008), a Texas court applied the following analysis:
“We are asked to decide, as a matter of first impression, whether a valid contractual jury waiver applies to nonsigna-tories seeking to invoke the waiver as agents of the signatory corporation. We conclude that a valid waiver provision may be invoked by a nonsignatory agent when it acts on behalf of the signatory corporation.
“In 2007, the Texas Supreme Court adopted a similar rule in the context of arbitration provisions. In re Kaplan Higher Educ. Corp., 235 S.W.3d 206, 209 (Tex.2007)....
[[Image here]]
“Relators urge us to analogize jury waiver provisions to arbitration clauses, thereby extending the Kaplan holding to the case before us. That a rule may be applied in arbitration clauses, however, does not necessarily render it appropriate for jury waivers. See [In re] Credit Suisse [First Boston Mortgage Capital, L.L.C.], 257 S.W.3d [486,] 491-92 [ (Tex.App.2008) ]. Arbitration agreements and jury waivers are subject to opposite presumptions:
“ ‘Unlike arbitration agreements, which are strongly favored under Texas law, the right to a jury trial is so strongly favored that contractual jury waivers are strictly construed and will not be lightly inferred or extended. Before a jury waiver will be enforced, such waiver must be found to be a voluntary, knowing, and intelligent act that was done with sufficient awareness of the relevant circumstances and likely consequences.’
“Id. at 490 (citations omitted). A handful of federal courts have extended a jury waiver to a nonsignatory through agency principles, but they based their reasoning on principles unrelated to re-lators’ proposed analogy between arbitration clauses and jury waivers. See Tracinda Corp. v. DaimlerChrysler AG, 502 F.3d 212, 224-25 (3d Cir.2007); Mowbray v. Zumot, 536 F.Supp.2d 617, 623 (D.Md.2008). Those courts explained that, because a corporation can act only through its agents and employees, by definition, one who agrees to a jury-waiver clause knows — and intends — that the clause naturally must extend to the corporation’s nonsignatory agents, too. See Tracinda, 502 F.3d at 223-25; see also In re Merrill Lynch Trust Co. FSB, 235 S.W.3d 185, 189 (Tex.2007) (orig.proceeding) (‘[C]ontract- *239 tag parties [that] agree to arbitrate all disputes “under or with respect to” a contract ... generally intend to include disputes about their agents’ actions because “[a]s a general rule, the actions of a corporate agent on behalf of the corporation are deemed the corporation’s acts.’”). Thus, extension-through-agency does not run afoul of the requirement that jury waivers be knowingly and voluntarily made. See Brady v. United States, 397 U.S. 742, 748, 90 S.Ct. 1463, 25 L.Ed.2d 747 (1970), quoted in [In re] Prudential Ins. Co., 148 S.W.3d [124,] 132 [ (Tex.2004) ].
“Accordingly, we hold that, when a valid contractual jury waiver applies to a signatory corporation, the waiver also extends to nonsignatories that seek to invoke the waiver as agents of the corporation. See Tracinda, 502 F.3d at 225; Kaplan, 235 S.W.3d at 209.”
We agree with the reasoning of the Texas court that analogy to arbitration cases is inappropriate because of the inapplicability of the Supremacy Clause of the United States Constitution based on cases from the United States Supreme Court construing the Federal Arbitration Act, 9 U.S.C. § 1 et seq., and the resulting application of opposite presumptions in interpreting arbitration and jury-waiver provisions. However, regarding the application of agency principles, based on the facts presented in this case, we must reach a different conclusion. There was no indication in Credit Suisse that the jury-waiver provision at issue there included language limiting the waiver to specifically defined parties against each other or that the documents expressly included the corporation’s agents with respect to other rights. See Credit Suisse, 273 S.W.3d at 846 (“Relators moved to quash Developer’s jury demand, citing a clause in the Loan Agreement in which the parties to the contract waived their right to submit disputes to a jury.”). The distinction is material.
The loan documents in this case evidence a failure by Colonial Bank to confer upon its employees or agents the benefits of a jury-waiver provision. Specifically, when the opportunity was presented at other places in the loan documents to expand the scope of the agreement to protect employees or agents, Colonial Bank demonstrated its ability to do so, yet it failed to do so in the context of the jury-waiver provision. We cannot rewrite the loan documents to give the jury-waiver provisions a broader effect when our standard of review requires strict construction of such provisions in deference to the constitutional guarantee of the right to trial by jury. Accordingly, the plaintiffs have shown a clear legal right to the reinstatement of their jury demand as to the individual defendants and, to that extent, the petition is due to be granted.

Conclusion

Based on the foregoing, we deny the plaintiffs’ petition for a writ of mandamus with respect to that portion of the trial court’s April 30, 2010, order striking their jury demand as to their claims against Colonial Bank and BB & T. We grant the plaintiffs’ petition for a writ of mandamus to the extent that it relates to their claims against the individual defendants, and we direct the trial court to vacate that portion of its April 30, 2010, order striking the plaintiffs’ jury demand as to those defendants and to enter an order consistent with this opinion.
PETITION DENIED IN PART; PETITION GRANTED IN PART; WRIT ISSUED.
COBB, C.J., and LYONS and SHAW, JJ., and HARWOOD, Special Justice,* concur.
*240 MURDOCK, J., concurs in the result.
WOODALL, STUART, SMITH, and BOLIN, JJ., concur in part and dissent in part.
PARKER, J., recuses himself.

. In the same order, the trial court dismissed Robert E. Lowder as a defendant. The plaintiffs make no argument in their petition challenging that dismissal.

. "Public policy, the Alabama Rules of Civil Procedure, and the Alabama Constitution all express a preference for trial by jury. Ex parte Cupps, 782 So.2d [772,] 775 [ (Ala.2000) ]. That said, ‘no constitutional or statutory provision prohibits a person from waiving his or her right to trial by jury.’ Mall, Inc. v. Robbins, 412 So.2d 1197, 1199 (Ala.1982)." 49 So.3d at 1200-01.